United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SEVERINO RIVAC, et al.,

    Plaintiffs,

    v.

NDEX WEST LLC, et al.,

    Defendants.
_____/

No. C 13-1417 PJH

**ORDER GRANTING MOTION TO DISMISS; ORDER DENYING MOTION TO STRIKE**

    The motion of defendants JPMorgan Chase Bank, N.A. (sued as JP Morgan Chase Bank, N.A. f.k.a. EMC Mortgage Corporation) ("JPMorgan"); Wells Fargo Bank, N.A., as trustee for the Certificateholders of Structured Asset Mortgage Investments II, Inc. ("SAMI II, Inc."), Bear Stearns Mortgage Funding Trust 2007-AR5 Mortgage Pass-Through Certificates, Series 2007-AR5 ("Wells Fargo"); and Mortgage Electronic Registration Systems, Inc. ("MERS") to dismiss the complaint in the above-entitled action and motion to strike portions of the complaint came on for hearing before this court on July 3, 2013. Plaintiffs appeared by their counsel Michael Yesk, and defendants appeared by their counsel Monique Jewett-Brewster. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion to dismiss and DENIES the motion to strike.

## BACKGROUND

    In January 2007, plaintiffs Severino Rivac and Warlita Rivac borrowed $728,000, secured by a promissory note and deed of trust on property located in San Leandro, California ("the property"). The lender was BC Bancorp, and the deed of trust named Stewart Title of California as trustee and MERS as beneficiary. Plaintiffs allege that BC Bancorp subsequently "securitized" and sold the interest in plaintiff's deed of trust to a mortgage-backed securities trust, through EMC Mortgage Corporation ("EMC"), to SAMI II,

Inc., on or before June 29, 2007. EMC retained the servicing rights, and was later merged into JPMorgan.

On March 15, 2011, MERS recorded an assignment of deed of trust as nominee for BC Bancorp, in favor of EMC. The document bears the signature of D'ne Fuller, as Assistant Secretary of MERS. Plaintiffs assert that Fuller was not employed by MERS and was in fact a "robo-signer" employed by Wells Fargo. Also on March 15, 2011, another assignment of deed of trust was recorded, wherein the deed of trust was assigned to Wells Fargo, as nominee for the certificateholders of SAMI II, Inc., Bear Stearns Mortgage Funding Trust 2007-AR5 Mortgage Pass-Through Certificates, Series 2007 AR5.

On June 1, 2011, Ndex, acting as agent for Wells Fargo, caused to be recorded a Notice of Default and Election to Sell under Deed of Trust in the Alameda County Recorder's Office. The Notice of Default indicated that plaintiffs were $74,501.02 in arrears on their loan. The Notice of Default was signed by Shannon E. Coleman, an employee of Ndex, as agent for the beneficiary, and was accompanied by a declaration of compliance with California Civil Code § 2923.5, signed by Keith Shehorn, an employee of EMC.

On May 31, 2012, Wells Fargo caused to be recorded a Substitution of Trustee, whereby Ndex was named as the trustee. It bears the signature of Birhan Ayele as Vice President of JPMorgan. Plaintiffs allege that Mr. Ayele was also a "robo-signer," with no authority to act on behalf of the true beneficiary of the deed of trust.

On January 1, 2013, Ndex caused a Notice of Trustee's Sale to be recorded in the Alameda County Recorder's Office, indicating that the unpaid balance on the plaintiffs' loan was $915,024.47. At the hearing on the present motions, however, counsel agreed that no foreclosure sale has as yet taken place.

On February 20, 2013, plaintiffs filed the present action, alleging seven causes of action against "all defendants" – (1) breach of contract, (2) breach of implied agreement, (3) slander of title, (4) violation of California Civil Code § 2923.5, (5) wrongful foreclosure, (6) violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, and (7) violation of California Business & Professions Code § 17200. The

complaint, which is 30 pages long, does not clearly set forth the facts that support each cause of action. Primarily, the facts asserted all appear to relate somehow to the "securitization" of the loan, and the foreclosure process, but it is not possible to tell which defendant is alleged to have done what.

In addition, attached to the complaint as an exhibit is a 125-page document entitled "Mortgage Securitization Audit & Analysis Report," prepared by a third party identified as "Certified Securitization Analysis LLC." Plaintiffs assert that this Audit/Analysis should be "incorporated by reference" into the complaint, though the facts alleged in the complaint are not related in any comprehensible way to any facts in the 125-page report (apart from the occasional reference in the complaint). Moreover, under the Federal Rules, the pleading of facts must be accomplished via the complaint – not an exhibit to the complaint prepared by an "expert" – and, in any event, the court declines to pore through a 125-page document in search of facts that may support the elements of the various causes of action.

Defendants JPMorgan, Wells Fargo, and MERS now seek an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing all seven causes of action for failure to state a claim. Defendants also seek an order pursuant to Federal Rule of Civil Procedure 12(f) striking allegations that plaintiffs are entitled to punitive damages and attorney's fees, and the portions of the prayer for relief that seeks punitive damages and attorney's fees.

**DISCUSSION**

A.  Motion to Dismiss

    1.  Legal standard

Federal Rule of Civil Procedure 8 requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group,

3

Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

2.  Defendants' motion

Defendants seek an order dismissing all seven causes of action. Before addressing the individual causes of action, defendants make a number of general arguments. First, defendants contend that securitization of the loan does not nullify defendants' right to foreclose. They argue that plaintiffs have alleged no facts showing that the securitization was improper, and that it is well-settled that the power of sale, which plaintiffs expressly granted in the deed of trust, is not nullified when a loan is securitized. They assert further that plaintiffs cite no facts in support of the "robo-signing" claim, and that the "robo-signing" allegations are not sufficient to support any cause of action alleged in the complaint.

Second, defendants argue that possession of the original note is not a requirement to foreclose. They note that in California, non-judicial foreclosure proceedings are exclusively governed by Civil Code § 2924, and assert that it is well-settled that § 2924 does not require possession of the original note in order to foreclose. They also contend that California's nonjudicial statutory scheme does not provide for a preemptive suit challenging standing, and that this action amounts to an impermissible preemptive suit challenging defendants' standing to foreclose.

Third, defendants argue that plaintiffs have suffered no prejudice arising from the alleged wrongful foreclosure. Under California law, to challenge a foreclosure sale successfully, the plaintiff must provide evidence of failure to comply with the procedural

4

requirements for the foreclosure sale that cause prejudice to the person attacking the sale. See Angell v. Superior Court, 73 Cal. App. 4th 691, 700 (1999). Defendants also assert that cases interpreting Civil Code § 2924 confirm that minor procedural defects in the foreclosure process do not support injunctive relief.

Here, defendants argue, plaintiffs have not alleged how any alleged irregularities in the process caused them any harm – in particular, plaintiffs do not dispute the underlying debt, and do not dispute that they defaulted on the payments. Defendants contend that they are entitled to foreclose on plaintiffs' continuing and uncured default, and that there are no facts alleged showing that plaintiffs suffered any prejudice here.

Fourth, defendants assert that plaintiffs did not tender the full amount of their indebtedness and have not alleged credible tender. Defendants note that while the tender rule does not apply to a cause of action for violation of Civil Code § 2923.5, it does apply to all the other causes of action that are related to the foreclosure sale (including any causes of action seeking damages related to any aspect of the foreclosure process). Defendants argue that a party cannot challenge foreclosure proceedings without first alleging tender.

The only one of these arguments that plaintiffs respond to separately is the argument regarding the necessity of tender. "Under California law, the 'tender rule' requires that as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the secured debt." Montoya v. Countrywide Bank, 2009 WL 1813973, at *11 (N.D. Cal. June 25, 2009) (citations omitted). Plaintiffs' position is that the tender rule is not an absolute rule, and in this case, it would be inequitable to require tender as a precondition to allowing plaintiffs to challenge the sale.

Plaintiffs argue that they should not be required to make a full tender offer because they are basing this case on the claim that the defendants lacked the legal power to foreclose. They assert that defendants are barred from foreclosing due to the fact that the Notice of Default, Substitution of Trustee, and Notice of Trustee's Sale were "false" and invalid and "signed by someone without authority." They contend that these false

documents render any subsequent foreclosure proceedings invalid, and that they should not have to tender in order to pursue a claim on that basis.

As to these four arguments, the court is somewhat persuaded by defendants' position, but given the inadequate pleading of the complaint, cannot easily ascertain the factual basis of plaintiffs' claims. Accordingly, the court does not dismiss the complaint based on these four arguments, but defendants are free to raise them again in response to any amended complaint.

          a.      Breach of contract and breach of implied agreement

Plaintiffs' first cause of action for breach of express contract appears to be premised on the theory that defendants breached the deed of trust and the Pooling and Services Agreement ("PSA") by foreclosing without the legal authority to do so. Defendants argue that the first cause of action fails because plaintiffs' "holder in due course" argument fails, and because securitization does not nullify defendants' right to foreclose.

Defendants argue further that the first cause of action fails because plaintiffs have not attached copies of the contracts, and have not alleged the specific terms of the contracts in the complaint; because plaintiffs do not allege specific facts showing that defendants breached the deed of trust; and because plaintiffs do not allege that they were parties to, or intended beneficiaries of, the PSA.

Defendants assert that plaintiffs' second cause of action for breach of implied agreement is unclear, but they assume that plaintiffs are attempting to plead a cause of action for breach of the implied covenant of good faith and fair dealing. Defendants argue that this cause of action fails because plaintiffs' securitization allegations cannot support their claim; because plaintiffs' claim is superfluous in light of the first cause of action for breach of contract; and because plaintiffs seek to hold defendants liable for conduct expressly permitted under the deed of trust (sale of the note without prior notice to the borrower).

In opposition, plaintiffs assert that they have alleged facts sufficient to state claims of breach of contract and breach of implied agreement. They contend that the deed of trust

6

requires the trustee to record the Notice of Default, and provides that the lender may appoint successor trustees, but claim that here, the Notice of Default was recorded by Ndex, which could not have been the trustee because Stewart Title was the original trustee under the deed of trust, and Ndex was not appointed by the true beneficiary. They add that the "agency" on behalf of JPMorgan and/or Wells Fargo as trustee is thus invalid, and in recording the foreclosure documents, "defendants" breached the deed of trust.

Plaintiffs also contend that they have adequately alleged breach of contract in pleading that the PSA required the "assignment" to be recorded within 90 days of the close of the trust, and that "[p]laintiffs' nonperformance derived from the fact that they were to be indemnified according to the agreement," that the assignment was not recorded within 90 days, and that plaintiffs suffered unspecified "damages" due to the cloud on their title. Plaintiffs do not respond to defendants' arguments that the claim for breach of implied agreement is superfluous in light of the first cause of action, that the securitization arguments cannot support these claims, that plaintiffs are seeking to hold defendants liable for conduct expressly permitted under the deed of trust, and that plaintiffs have not alleged facts showing that they have standing to allege breach of the deed of trust or the PSA.

The motion is GRANTED. Plaintiffs appear to lack standing to allege any claim of breach of express contract based on the deed of trust because they themselves were in breach of the deed of trust by defaulting on their payments. As for the PSA, plaintiffs allege no facts showing that they have standing to sue. In addition, plaintiffs have alleged no facts showing any breach of "implied agreement."[1] However, in accordance with the above discussion regarding the deficiencies in the complaint, the court will grant leave to amend these two causes of action.

---

[1] The second cause of action alleges that defendants "breached its [sic] agreement with [p]laintiffs and with the Series 2007-A Trust, and committed the following acts" – "invoked the power of sale without notice to [p]laintiffs," as required under the deed of trust, and "violated the PSA for the REMIC Trust by failing to record the assignment(s) of the [d]eed of [t]rust in accordance with the terms of the PSA." Cplt ¶ 31. This does not read like a claim of either breach of implied contract or breach of the implied covenant of good faith and fair dealing, but in any event, it is fairly incomprehensible.

7

        b.      Slander of title

Plaintiffs' third cause of action for slander of title appears to be premised on the theory that the foreclosure documents were invalid because they were robo-signed, and because defendants lacked the authority to record the documents because the loan was securitized. See Cplt ¶¶ 38-31. The elements of a claim of slander of title are (1) publication, (2) falsity, (3) absence of privilege, and (4) disparagement of another's land which is relied upon by a third party and which results in a pecuniary loss. Sumner Hill Homeowners' Ass'n, Inc. v. Rio Mesa Holdings, LLC, 205 Cal. App. 4th 999, 1030 (2012); see also Manhattan Loft LLC v. Mercury Liquors, Inc., 173 Cal. App. 4th 1040, 1051 (2009).

Here, defendants argue that the third cause of action fails because plaintiffs plead no facts showing that defendants published false information. Defendants contend that the allegations that the loan was securitized or that the foreclosure documents were "robo-signed" are without merit and cannot support any cause of action against defendants. Moreover, defendants contend, the allegations relate to the foreclosure documents, which are deemed privileged communications under California Civil Code § 47(c)(1), and plaintiffs must therefore allege facts showing that defendants acted with actual malice. Here, defendants argue, while plaintiffs allege that defendants acted with "malice and reckless regard," they have alleged no facts whatsoever to support such a conclusory assertion.

In opposition, plaintiffs argue that they have alleged facts sufficient to state a claim for slander of title. Plaintiffs contend, first, that they have alleged that "defendants" recorded "false" documents. They contend that the foreclosure initiated by "defendants" is void due to the fact that the June 1, 2011 Notice of Default and Election to Sell was signed by "an entity," not the true trustee, due to the "intervening transfer to the Series 2007 A Trust REMIC and break in the chain of title." They claim that because the Notice of Default "was signed by someone without authority and is thus false, it renders any subsequent foreclosure proceedings invalid." They also assert that the Notice of Default was "false" because "defendants" failed to comply with the notice requirements of Civil Code § 2923.5,

although plaintiffs have omitted details such as which defendant was obligated to comply with the notice requirement and failed to do so.

Plaintiffs argue that the Substitution of Trustee recorded on May 31, 2012 is "invalid" because neither JPMorgan nor Wells Fargo was the "true" beneficiary under the deed of trust, and thus lacked the power to make a valid substitution. And since this substitution failed, they argue, Ndex could not exercise any of the powers given to the trustee under the deed of trust, and the recording of the notice of trustee's sale was "false" because it was executed and exercised by Ndex, which was not the "true trustee."

Thus, plaintiffs claim, "defendants" recorded "false documents" when they recorded the Substitution of Trustee, and the Notice of Trustee's Sale. According to plaintiffs, the recording of these "false" documents cast doubts on plaintiffs' title, although they do not explain how, even if the documents were "false," they had the effect of casting a cloud on the title. Plaintiffs claim they have suffered a direct financial loss by the recording of these "false" documents because they were "forced to seek legal counsel to protect their interest" in the property, and from having their home wrongfully sold.

With regard to whether the defendants' actions were privileged, plaintiffs contend that they have alleged that defendants acted with malice by recording these documents because they lacked reasonable grounds to believe in the truth of the publication, in that they were aware that "they" could not be the true beneficial interest holder of plaintiff's Deed of Trust.

Finally, plaintiffs argue that they have been "prejudiced by economic damages and irreparable harm." They reiterate that they suffered direct economic harm by the recording of these "false" documents because they were forced to seek legal counsel to protect their interest in the property. They also contend that they have alleged "the detrimental impact to the vendibility" of their property, "stating pecuniary damages sustained by [p]laintiffs as a result of the wrongfully recorded foreclosure documents and the fraudulent billings." They assert further that the recording of these documents by defendants has given rise to "a need for policy endorsements for title insurance, settlement of a claim shown on a title

report, and/or a significant dissuasive factor for any prospective purchaser inspecting the property for sale, and/or its disclosures, any and all factors negatively affected and continue to affect the purchase price of the Subject Property, and vendibility, or the Subject Property."

The court finds that the motion must be GRANTED. To the extent that this cause of action is based on the alleged "invalid" nature of the foreclosure proceedings and/or defendants' alleged lack of standing to foreclose, the court is persuaded by defendants' arguments that plaintiffs have failed to state a claim. However, because the claim is so unclearly pled – given the mixture of allegations of securitization and statutory requirements for non-judicial foreclosure, plus the lack of any statement as to what it is that each defendant is alleged to have done – the court finds that the dismissal should be with leave to amend.

c.   Violation of California Civil Code § 2923.5

Plaintiffs assert a violation of Civil Code § 2923.5, which appears to be premised on the theory that defendants failed to contact them 30 days prior to recording the Notice of Default, and that the declarant did not have personal knowledge of whether plaintiffs were contacted. See Cplt ¶¶ 63-64. Defendants argue that this cause of action fails because § 2923.5 applies only to owner-occupied properties, and plaintiffs do not allege that this property was their principal residence; because § 2923.5 does not require the declarant to have personal knowledge; and because plaintiffs' claim that defendants did not contact them is directly contradicted by the Declaration of Compliance.

In opposition, plaintiffs assert that defendants violated Civil Code § 2923.5 because the Notice of Default was recorded without a statement of compliance, and because defendants failed to contact plaintiffs, in person or by telephone, at least 30 days prior to recording the Notice of Default on June 1, 2011. They claim that the statement contained in the Notice of Default – that the plaintiffs had been contacted 30 days before – was "false" because there was no true beneficiary at that point, and because plaintiffs were never contacted. Plaintiffs argue that this failure to contact them renders the Notice of Default

10

and all subsequent proceedings based on the Notice, including any subsequent Trustee's Sale, invalid and void.

The court finds that the motion must be GRANTED. Plaintiffs' claim appears to be based on the allegation that the "entity" that signed the Notice of Default did not have the authority to do so. This allegation appears to be connected to the allegations regarding assignments and the substitution of the trustee – which are pled in a totally confusing manner in the complaint. So to that extent, the claim is dismissed with leave to amend.

The court notes in addition, however, that it appears (based on authority cited by defendants) that the actual contents of the notice were adequate as a matter of law. The only dispute is whether the beneficiary or authorized agent contacted plaintiffs 30 days before recording the Notice of Default. It is not entirely clear whether plaintiffs are claiming that no one contacted them, or that the "beneficiary" did not contact them (on the theory that there was no beneficiary).

    d.  Wrongful foreclosure

In the fifth cause of action, plaintiffs allege a claim of wrongful foreclosure premised on the theory that the loan was securitized, and that foreclosure documents were robo-signed. See Cplt ¶¶ 66-72. Defendants argue that for the reasons set forth above, this cause of action fails. In addition, defendants argue, plaintiffs' claims fail because they do not allege tender, and because plaintiffs do not allege that they suffered any prejudice from the purported wrongful foreclosure.

In opposition, plaintiffs contend that they have adequately alleged an equitable cause of action to set aside a foreclosure sale, under Lona v. Citibank, 202 Cal. App. 4th 89 (2011). Under California law,

> the elements of an equitable cause of action to set aside a foreclosure sale are (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.

Id. at 104.

11

Plaintiffs allege that "a foreclosure sale of [p]laintiffs' property is illegal and oppressive" because defendants "are not the true beneficiary [sic] or trustee [sic]" and thus lack the power of sale.  Plaintiffs do not allege that the property was sold – a necessary element of a wrongful foreclosure claim, see Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F.Supp. 2d 952, 961 (N.D. Cal. 2010) – but simply that were a foreclosure sale to be held, it would be invalid.

Finally, plaintiffs argue that the are excused from the tender rule "where the sale is void."  They claim that they should be permitted to proceed with their wrongful foreclosure cause of action because they have met all the elements of the claim.

The court finds that the motion must be GRANTED.  Because the allegations are so confusing and vaguely articulated, the court would be inclined to grant leave to amend.  On the other hand, if (as counsel stated a the hearing) no sale has taken place, then plaintiffs cannot meet one of the essential elements of the claim, and no leave to amend is warranted.

        f.      RICO

In the sixth cause of action, plaintiffs assert a cause of action under RICO, which appears to be premised on the theory that defendants "participated in a scheme to defraud" them by "concealing" the fact that "the [l]oans were securitized," and by robo-signing the foreclosure documents.  See Cplt ¶¶ 77-79.  They assert that these "acts" were "criminal or punishable as a crime" and that there were "at least two predicate acts of the same nature which form a 'pattern.'"  Cplt ¶ 77.

Plaintiffs do not specify the subsection of RICO under which their claims arise, although they do (in the middle of their rambling allegations) assert a claim under § 1962(d) of conspiracy to commit fraud using the U.S. mails and the Internet, and based on the allegations, it appears that the underlying violation is a violation of § 1962(a).  They also allege that they are entitled to treble damages under § 1964(c).

Defendants argue that the allegations that the loan was securitized and that the foreclosure documents were robo-signed are not sufficient to support any cause of action.

12

Defendants also assert that plaintiffs have failed to allege facts with the specificity required to state a claim under RICO.

To state a claim for a RICO violation under 18 U.S.C. § 1962(a), a plaintiff must allege facts showing that a defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activitity (5) causing injury to the plaintiff's business or property. See Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1086 (9th Cir. 2002)). To state a claim under § 1962(d), a plaintiff must allege facts showing a conspiracy to violate subsection (a), (b), or (c). When alleging fraud as the racketeering activity, the plaintiff must "state with particularity the circumstances constituting fraud or mistake." In re Countrywide Fin. Corp. Mortg. Marketing & Sales Practice Litig., 601 F.Supp. 2d 1201, 1215 (2009).

Here, defendants contend, plaintiffs have provided no specific facts showing a pattern of racketeering activities, and have instead simply alleged in a conclusory manner that defendants engaged in a fraudulent scheme concerning the securitization of the loan and the foreclosure process. Thus, defendants argue, the allegations are insufficient to support a RICO claim.

In opposition, plaintiffs assert that under Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268 (1992), they are entitled to sue under § 1964(c) if the alleged RICO violation "was the proximate cause" of their injury. See also Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006) (discussing standing to allege claims under § 1962(a) and § 1962(c)).

Plaintiffs also argue that their "audit" (referring to the 125-page document attached to the complaint) indicates that "Defendants [sic] causation of the continuing harm of slander of title and correlating causes of action stated herein as a result of the fraudulent use of robo-signers, breaches of Plaintiffs' Deed of Trust and the PSA for the Series 2007 A Trust, and breaches of California state and federal law."

Plaintiffs claim that the following actions are "evidenced" in the "audit" – "Defendants' assertion of rights as Servicer without legal authority;" "Failing to evidence chain of title

13

possession and indebtedness;" "Failing to properly substitute foreclosing trustee;" "Violation of MERS written procedures and rules;" "Purporting to transfer beneficial interest without endorsement or assignment;" and "Failing to identify the owner of the Note and Servicer of the Note with contact information on the [Notice of Default]."

The court finds that the motion must be GRANTED. First, "securitization" of a loan (as plaintiffs define it) is not a racketeering activity, and is not "criminal or punishable as a crime." In addition, because the alleged damages arise from plaintiffs' conduct (failure to stay current on their loan payments), rather than from any action by defendants, plaintiffs cannot state a viable RICO claim. See Anza, 547 U.S. at 461. The dismissal of the RICO claim is with prejudice.

### g. Business & Professions Code § 17200

Plaintiffs' seventh cause of action for violation of § 17200 appears to be premised on the theory that defendants lack authority to foreclose, and that they did not comply with Civil Code § 2923.5. Defendants argue that this cause of action fails because plaintiffs do not sufficiently allege an economic injury or loss of property, as required under § 17204, and thus lack standing to assert a UCL claim; because plaintiffs cannot base a UCL claim on a violation of the due diligence requirements of Civil Code § 2923.5, as the remedy for violation of § 2923.5 is limited to postponement of the foreclosure sale, as stated by the court in Mabry v. Superior Court, 185 Cal. App. 4th 208, 214-15 (2010); and because plaintiffs fail to plead facts with particularity sufficient to state a claim under the "unlawful," "unfair," or "fraudulent" prongs of the UCL.

In opposition, plaintiffs make arguments similar to those already set forth above. – that there was never a recording of a power of sale to the foreclosing entity identified in the Notice of Default recorded on June 1, 2011; that there was no valid, recorded document giving JPMorgan and/or Wells Fargo, as trustee, ownership of the beneficial interest under the plaintiffs' Deed of Trust. Plaintiffs also assert that the motion should be denied as to the § 17200 claim because it is likely that they will prevail on the merits of the wrongful foreclosure claim.

In reply, defendants reiterate that plaintiffs cannot establish standing under the UCL, because all their purported damages arise from their own breach of the loan agreement, and because they have failed to allege facts showing they should be relieved from the tender requirement. They also note that plaintiffs' argument in opposition focuses on the wrongful foreclosure claim, which defendants assert fails to state a claim.

The court finds that the motion must be GRANTED. Because the court grants leave to amend all other causes of action, with the exception of the RICO claim and possibly the wrongful foreclosure claim, leave to amend will also be granted as to the § 17200 claim.

B.   Motion to Strike

   1.   Legal standard

Federal Rule of Civil Procedure 12(f) provides that the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (quotation and citation omitted). In order to determine whether to grant a motion to strike under Rule 12(f), the court must determine whether the matter the moving party seeks to have stricken is (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous. Id. at 973-74.

Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Colaprico v. Sun Microsystem, Inc., 758 F.Supp. 1335, 1339 (N.D. Cal. 1991). When a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party." In re 2TheMart.com, Inc. Sec Lit., 114 F Supp. 2d 955, 965 (C.D. Cal. 2000). A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action. Id. However, a motion to strike is proper when a defense is insufficient as a matter of law. Chiron Corp. v. Abbot Labs., 156 F.R.D. 219, 220 (N.D. Cal. 1994).

2. Defendants' motion

Defendants seek an order striking allegations that plaintiffs are entitled to punitive damages and attorney's fees, and the portions of the prayer for relief that seeks punitive damages and attorney's fees. They argue that plaintiffs have not adequately pled facts showing entitlement to punitive damages, and that plaintiffs have alleged no statutory, contractual, or legal basis for seeking attorney's fees.

As stated at the hearing, the motion is DENIED, in accordance with Whittlestone. While defendants may be correct that plaintiffs have alleged no basis for entitlement to punitive damages or attorney's fees, Rule 12(f) does not provide a basis for striking those allegations from the complaint, as such allegations do not constitute an insufficient defense, and are not redundant, immaterial, impertinent, or scandalous.

**CONCLUSION**

In accordance with the foregoing, defendants' motion to dismiss is GRANTED and the motion to strike is DENIED. The sixth cause of action under RICO is dismissed with prejudice; the fifth cause of action for wrongful foreclosure is dismissed with leave to amend to the extent that plaintiffs can allege facts sufficient to support all the elements of the claim (including that there was a "sale" of real property); and the remaining causes of action are dismissed with leave to amend. Plaintiffs must clarify the bases of the claims, and must allege supporting facts as to each defendant. Any amended complaint shall be filed no later than August 7, 2013. As indicated at the hearing, the court will not consider the 125-page alleged "expert report" as part of an amended complaint. Any further motion to dismiss will be decided on the papers.

**IT IS SO ORDERED.**

Dated: July 10, 2013

PHYLLIS J. HAMILTON
United States District Judge