Michael Yesk (SB#130056)
Megan Dailey (SB#221574)
Yesk Law
70 Doray Drive, Ste 16
Pleasant Hill, CA 94523
925-849-5525
m.yesklaw@gmail.com
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

SEVERINO RIVAC and WARLITA RIVAC,   )   Case No.: 4:13-cv-01417-PJH
                                    )
          Plaintiffs,               )   PLAINTIFFS' OPPOSITION TO MOTION
                                    )   TO DISMISS PLAINTIFFS' SECOND
          vs.                       )   AMENDED COMPLAINT
                                    )
NDEX WEST, LLC; JP MORGAN CHASE     )   Date:  December 4, 2013
BANK, N.A. f.k.a. EMC MORTGAGE      )   Time: 9:00 a.m.
CORPORATION; WELLS FARGO BANK,      )   Ctrm: 3, 3rd Floor
N.A.; MORTGAGE ELECTRONIC           )
REGISTRATIONS SYSTEMS, INC.; AND    )   Hon. District Judge Phyllis J. Hamilton
DOES 1-100; INCLUSIVE,              )
                                    )
          Defendants.               )
                                    )
                                    )
                                    )
_____

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

## **Table of Contents**

Table of Authorities ........................................................................................................... iii

    Cases ..................................................................................................................... iii

    Statutes ................................................................................................................. iv

    Other Authorities ................................................................................................. iv

Memorandum of Points and Authorities .......................................................................... 1

Introduction ....................................................................................................................... 1

Factual Background ........................................................................................................... 1

Law and Argument ............................................................................................................ 2

    I.       Legal Standard ................................................................................. 3

    II.     Plaintiffs Have Standing to Dispute Foreclosure and Violation of Pooling

          and Servicing Agreement……………………………………………………5

    III.    Plaintiffs' Claims Are Not Barred  By the Tender Rule Because It Does

          Not Apply……………………………………………………………………7

    IV.    Plaintiffs Stated Sufficient Facts for Breach of Contract and Implied

          Agreement**Error! Bookmark not defined.Error! Bookmark not

          defined.**……………………………………………………….………9

    V.     Plaintiffs State Facts Sufficient to Support a Cause of Action for Slander of

          Title……………………………………………………………………….11

          A.      Defendants Recorded False Documents…………………………11

          B.      Defendants' Actions Were Not Privileged, and were Malicious Due to

          Lack of Reasonable Grounds for Belief in the Truth of the Publication………...13

          C.  Plaintiff is Prejudiced by Economic Damages and Irreparable Harm……….14

    VI.    Plaintiff States Sufficient Facts to Support Their Wrongful Foreclosure Claim  .16

VII.     Plaintiffs Stated a Cause of Action for Violations of California Civil Code Section

         2923.5 …………………………………………………………………………18

VIII.    Plaintiffs Have Standing Under Federal Law (That is Not Time Barred) And Have

         Stated Sufficient Facts Under TILA…..……………………………………………19

IX.      Plaintiffs State Facts Sufficient to Constitute a RESPA Violation………………20

X.       Plaintiffs State Facts Sufficient to Constitute an FDCPA Violation……………21

XI.      Conclusion………………………………………………………………………23

## **Table of Authorities**

Cases

*Argueta v. J.P. Morgan Chase*, 787 F.Supp.2d 1099 (E.D. Cal. 2011)........................................ 13

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ....................................................................................... 2

*Bank of Italy v. Bentley*, 217 Cal. 644 (1933) .............................................................................. 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................... 2

*Debrunner v. Deutsche Bank National Trust*, 2012 WL 883128 (Cal. Ct. App. 2012)................. 5

*Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 356 (2011).............................................. 4

*Gomes v Countrywide Home Loans*, 192 Cal. App. 4th 1149 (2011) ............................................ 3

*Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285 (1911) ............................................................. 6

*In re Cruz*, 457 B.R. 806 (Bankr.S.D.Cal. 2011)......................................................................... 11

*In re Salazar*, 448 B.R. 814 (Bankr.S.D.Cal. 2011) ........................................................... 6, 10, 11

*Javaheri v. JPMorgan Chase Bank, N.A.*, 2011 WL 2173786 (C.D. Cal. 2011) ........................ 13

*Kachlon v. Markowitz*, 168 Cal. App. 4th 316 (2008)................................................................... 9

*Mabry v. Superior Court*, 185 Cal. App. 4th 208 (2010)............................................................... 7

*Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040 (2009) .......................... 8

*Onofrio v. Rice*, 55 Cal. App. 4th 413 (1997).............................................................................. 6

*Sacchi v. Mortgage Electronic Registration Systems, Inc.*, 2011 WL 2533029 (C.D. Cal. 2011) 3, 5, 6, 12

*Stockwell v. Barnum*, 7 Cal. App. 413 (1908) .......................................................... 10

*Tamburri v. Suntrust Mortgage, Inc.*, 2011 WL 6294472 (N.D. Cal. 2011) ........................ passim

*Ung v. Koehler*, 135 Cal. App. 4th 186 (2005) ............................................................ 5

*Wanger v. EMC Mortgage Corp.*, 103 Cal. App. 4th 1125 (2002) ............................................ 15

Statutes

12 C.F.R. § 560.2(b)(10) ................................................................................ 7

12 C.F.R. § 560.2(b)(4) ................................................................................. 6

12 C.F.R. § 560.2(c)(2) ............................................................................... 7, 8

12 C.F.R. 560.2(b)(1-13) ............................................................................... 7

12 U.S.C. § 1461, *et seq.* ........................................................................... 6, 7

12 U.S.C. § 2605(e) ................................................................................... 14

Cal. Civ. Code § 2923.5 ......................................................................... 7, 12, 13

Cal. Civ. Code § 2924 .................................................................................. 6

Cal. Civ. Code § 2924(a)(1) ............................................................................ 3

Cal. Civ. Code § 2932.5 ....................................................................... 6, 9, 10, 11

Cal. Civ. Code § 47(c)(1) .............................................................................. 9

Fed. R. Civ. Proc. 12(b)(6) ........................................................................... 13

Fed. R. Civ. Proc. 9(b) ............................................................................... 13

Other Authorities

Miller & Starr California Real Estate 3d 10:212 ........................................................ 5

**<u>Memorandum of Points and Authorities</u>**

**<u>Introduction</u>**

Plaintiffs SEVERINO RIVAC and WARLITA RIVAC, ("Plaintiffs") herein submit their PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT for failure to state a claim.

**<u>Factual Background</u>**

SEVERINO RIVAC and WARLITA RIVAC are allegedly the Trustor/Borrower(s) on that certain Deed of Trust ("DOT") recorded on February 13, 2007 as Instrument No. 2007-068834 in the Official Records of the Recorder of Alameda County, California, purportedly putting a lien on the real property located at 722 Callaway Street, San Leandro, CA 94577 APN: 075-0209-041 (the "Property").

Plaintiffs are informed and believe and on that basis allege that securitization is the act of producing an investment vehicle of Mortgage-Backed Securities ("MBS") using the Borrower's Mortgage NOTE as the under-lying corpus, as collateral. In each and every securitized loan produced by these Banking Institutions, file with the Securities and Exchange Commission certain documents which are mandated, include but is not limited to the Pooling and Servicing Agreement, Prospectus, Indenture, 10-K [yearly report], 10-Q [quarterly report], 8-K [current report] Form 15-D and the Servicing Agreements]. The problem is that the original note does not have the endorsements in "wet ink" on the note. In fact, Wells Fargo does not have the original note and the original note was never endorsed properly to Wells Fargo or any other entity.

Plaintiffs are informed and believe that the actual lenders in this case, the individuals who invested in the securitized note, have not been consulted as to a loan modification, foreclosure or settlement. In fact, Defendants JP Morgan and Wells Fargo failed to communicate with anyone

1    representing the actual investors, and committed fraud on both the Plaintiffs and the actual

2    investors when they claimed to have done so.

3          Plaintiffs are informed and believe and on that basis allege that the loan in question was

4    split from the Deed of Trust for securitization.  Defendants, and each of them, failed to follow

5    the Pooling and Servicing Agreement ("PSA") for the securitized trust, failed to endorse the note

6    and assign the deed of trust in a timely manner as set forth in the PSA, and failed to properly

7    identify the true party of interest in their foreclosure action.

8          Plaintiffs are informed and believe and on that basis allege that securitization trusts are

9    not allowed to simply take any property.  In fact, to preserve their special tax status, they are

10   forbidden from taking property after their cut-off dates.  Until the delivery to the trustee is

11   performed by the settlor, or until the securities are definitely ascertained by the declaration of the

12   settlor, when he himself is the trustee, no rights of the beneficiary in a trust created without

13   consideration arise.  *Riegel v. Central Hanover Bank & Trust Co.*, 266 App. Div. 586.  As a

14   result, if the trust does not own the loan and has not taken delivery of the original note by the

15   closing date, according to the PSA it can't receive the proceeds of the foreclosure or the title to

16   the home, even if it's allowed to foreclose as a holder of the deed of trust.  According to the

17   terms of the PSA, all promissory notes transferred to the Trust are required to have a complete

18   chain of endorsements from the original payee thereof to either "Blank" or to the Trustee for the

19   specific Trust.  The PSA requires this complete chain of endorsements to be in place by the

20   Trust's closing date or under no circumstances later than 90 days after the Trust's closing date.

21   The servicer in the present case is trying to force through a foreclosure in the name of a

22   beneficiary that clearly has no interest in the underlying loan that had been previously sold. This

23   conduct is a fraud on the borrower, a fraud on the investors and a fraud on the court.

24         Under the Plaintiffs' theory of the case it is clear that JP Morgan or Wells Fargo acting as

25   JP Morgan is a stranger to Plaintiffs' mortgage loan and that its attempts to foreclose are void

26   and of no force and effect.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT - 2

1  Plaintiffs are informed and believe and on that basis allege that in order to maintain the

2  integrity of the transaction for the investors, the original lender must accomplish two goals.

3  First, is ensuring favorable tax treatment of the bank, the securitization trust, and the investors,

4  ideally through the securitization trust having "pass-thru" tax status, meaning that the

5  securitization trust is not taxed on its own income when it is paid on the receivables.  Second,

6  Bankruptcy remoteness is critical for making the economics of securitization work. By insulating

7  the receivables placed in the trust from the claims of the bank's creditors, securitization enables

8  investors to invest based solely on the value of the receivables and not have to worry about the

9  bank's other business activities. To accomplish this, the bank conveys receivables to a trust for

10  the benefit of certificate holders.  Furthermore, and perhaps more critical, is ensuring that the

11  trust's assets are "bankruptcy remote," meaning that they are insulated from the claims of the

12  bank's creditors. This involves ensuring that the transfer of the receivables to the trust is a "true

13  sale" and not a financing transaction.

14  On February 13, 2007, Plaintiffs recorded a Deed of Trust in the Alameda County

15  Recorder's Office against the Subject Property to secure a Note, in the amount of $728,000 in

16  favor of BC Bancorp as original "Lender."  The Deed of Trust names Stewart Title of California

17  as Trustee and MERS as Beneficiary.

18  Subsequently, as was its usual practice, BC Bancorp securitized and sold the beneficial

19  interest in Plaintiffs' Deed of Trust to a Mortgage Backed Securities Trust, through EMC

20  Mortgage Corporation ("EMC") as Sponsor and Seller to SAMI II Inc., the Depositor of the

21  securitized trust, Series 2007-A Trust, on or before June 29, 2007, the closing date for the trust,

22  according to Plaintiffs' audit.  EMC retained the servicing rights and was later merged into

23  Defendant JP Morgan.

24  On March 15, 2011, MERS recorded an Assignment of Deed of Trust as Nominee for BC

25  Bancorp in favor of EMC Mortgage Corporation which was acting as Servicer to the securitized

26  trust under the PSA for the Series 2007-A Trust.  This document was signed by D'ne Fuller as

Assistant Secretary of MERS.  However, Plaintiffs are informed and believe, Ms. Fuller is not in

1    fact an Assistant Secretary of MERS, but instead an employee of Wells Fargo, and a robo-signer,

2    who was not authorized on behalf of the true beneficiary of Plaintiffs' Deed of Trust to assign

3    any interest.   Nor did BC Bancorp, possess any valid interest to convey, other than at most,

4    servicing rights.

5            On March 15, 2011, MERS recorded a Second Assignment of Deed of Trust as Nominee

6    for EMC Mortgage Corporation in favor of Wells Fargo as Trustee for the Certificate-holders of

7    Structured Asset Mortgage Investments II Inc. Bear Stearns Mortgage Funding Trust 2007-AR5,

8    Mortgage Pass Through Certificates, Series 2007-AR5 (Series 2007-A Trust).   This document

9    was also signed by D'ne Fuller as Assistant Secretary of MERS.   However, Plaintiffs are

10   informed and believe, Ms. Fuller is not in fact an Assistant Secretary of MERS, but instead an

11   employee of Wells Fargo, and a robo-signer, who was not authorized on behalf of the true

12   beneficiary of Plaintiffs' Deed of Trust to assign any interest.   Nor did EMC Mortgage

13   Corporation, possess any valid interest to convey, other than at most, servicing rights.

14           On June 1, 2011, a Notice of Default and Election to Sell Under the Deed of Trust

15   ("NOD") was recorded in the Alameda County Recorder's Office, thus initiating the process of

16   foreclosing upon Plaintiffs' home.   The Notice of Default was signed by Shannon E. Coleman,

17   purportedly as an employee of NDEX West, LLC, as agent for the beneficiary.   This document

18   was accompanied by a declaration of compliance with California Civil Code § 2923.5, signed by

19   Keith Shehorn purportedly as an employee of EMC Mortgage Corporation.

20           On May 31, 2012, A Substitution of Trustee was recorded by JP Morgan in favor of

21   NDEX.   This document was signed by Birhan Ayele as Vice President of JP Morgan.   However,

22   Mr. Ayele was a robo-signer with no authority to act on behalf of the true beneficiary of

23   Plaintiffs' Deed of Trust, due to JP Morgan and Wells Fargo's failure to record an assignment in

24   a timely manner and breaches of Plaintiffs' Deed of Trust and PSA.

25           On June 8, 2012, a Notice of Trustee's Sale was recorded in the Alameda County

26   Recorder's Office by NDEX.

Thereafter, Plaintiffs filed the instant Complaint.

## Law and Argument

### I.        Legal Standard

A Rule 12(b)(6) Motion to Dismiss tests only whether the Plaintiffs' Complaint states sufficient facts to state a plausible claim for relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  A complaint which contains sufficient factual allegations "to raise a right to relief above the speculative level" will survive a motion to dismiss.  *Id.*  A complaint must state a claim that is facially plausible, requiring facts showing more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In evaluating whether a complaint meets this standard, the court is not required to take the plaintiff's legal conclusions as true, but must take the plaintiff's factual allegations as true, and then "determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 1950.

### II.       Plaintiffs Have Standing to Dispute Foreclosure and Violation of Pooling and Servicing Agreement

Plaintiffs have standing to sue Defendants.  Plaintiffs do not claim any benefits to or seek any adjudication of the investors' claims regarding the failed securitization.  Rather, Plaintiffs' claims are limited to their own interests - protection of their property rights.

Courts have recognized a borrower's right to bring claims challenging a party's interest under a deed of trust.  *See Vogan v. Wells Fargo Bank, N.A. et al*, 2011 WL 5826016, *7; Schafer v. CitiMortgage, Inc.*, No. CV 11-03919 ODW, 2011 WL 2437267, *4 (C.D. Cal. June 15, 2011); *Sacchi v. Mortgage Electronic Registration Systems, Inc.*, No. CV 11-1658 ARM:, 2011 WL 2533029, at *5 (C.D. Cal. June 24, 2011) ("It is true, as Defendants repeatedly assert, that California Civil Code § 2924, et seq. authorizes non-judicial foreclosures in this state. It is not the case, however, that the availability of a non-judicial foreclosure process somehow

1   exempts lenders, trustees, beneficiaries, servicers, and the numerous other (sometimes

2   ephemeral) entities involved in dealing with Plaintiffs from following the law."). Indeed, one of

3   the very purposes of California's non-judicial foreclosure statutes is "to protect the debtor/trustor

4   from wrongful loss of the property."  *Fontenot v. Wells Fargo Bank, N.A.,* 198 Cal. App. 4th

5   256, 270 (2011) (internal quotations omitted).

6        *Gomes v. Countrywide*, 192 Cal. App. 4th 1149 (2011), held that California Civil Code §

7   2924(a)(1) does not "provide for a judicial action to determine whether the person initiating the

8   foreclosure process is indeed authorized."  *Id*. at*1155. But the issue in *Gomes* was not whether

9   the wrong entity had initiated foreclosure; rather, the issue was whether the company selling the

10   property in the non-judicial foreclosure sale (MERS) was authorized to do so by the owner of the

11   promissory note.  *See id*. at 1155.  That is, *Gomes* involved a challenge to whether an agent had

12   the authorization of its principal, who was the undisputed beneficiary under the deed of trust, to

13   initiate foreclosure.  It was not, as here, a challenge to the principal's claimed status as

14   beneficiary under the deed of trust.

15        Plaintiffs are not challenging legal securitization under paragraph 20 of the DOT, but late

16   transfer to the trust in violation of the Pooling and Servicing Agreement for the Series 2007-A

17   Trust.  This Court should follow the line of cases imposing a literal interpretation of New York

18   Trust Law Estates, Powers and Trusts § 7-2.4 which was relied upon in *Glaski v. Bank of*

19   *America,* 218 Cal.App. 4th 1079: that acts in contravention of the trust are void and not voidable.

20   The late assignment should be held to be void instead voidable under the ultra vires doctrine

21   imposed on borrowers under *Calderon v. Bank of America, N.A.*, W.D.Tex., Apr. 23, 2013, No.

22   SA:12-cv-00121-DAE, ___ F.Supp.2d ___, 2013 WL 1741951, at p. 12; *Aniel v. GMAC*

23   *Mortgage, LLC*, N.D.Cal. Nov. 2, 2012, No. C 12-04201-SBA, 2012 WL 5389706; and

24   *Almutarreb v. Bank of New York Trust Company, N.A.*, N.D.Cal. Sept. 24, 2012, No. C 12-3061-

25   EMC, 2012 WL 4371410 because applying the literal interpretation of NewYork Trust Law

26   furthers the statutory purpose which is to protect the trust beneficiaries from wrongful acts of the

trustee, in this case, adverse tax consequences of the trust losing its Real Estate Mortgage

Investment Conduit ("REMIC") status.  Case law supporting the literal interpretation of the trust law includes California law under *Gilbert v. Chase Home Finance, LLC*, E.D.Cal. May 28, 2013, No. 1:13-cv-265 AWI SKO, 2013 WL 2318890, and also, *Conlin v. Mortgage Electronic Registration Systems, Inc.*, (6th Cir. 2013) 714 F.3d 355, 361, *Culhane v. Aurora Loan Services of Nebraska*, (1st Cir. 2013) 708 F.3d 282, 291, *Reinagel v. Deutsche Bank National Trust Co.* (5th Cir. 2013) ___ F.3d ___, 2013 WL 3480207 at p. 3, *Wells Fargo Bank, N.A. v. Erobobo* (Apr. 29, 2013) 39 Misc.3d 1220(A), 2013 WL 1831799, slip opn. p. 8, and *In Re Saldivar*, Bankr.S.D.Tex., Jun. 5, 2013, No. 11-10689, 2013 WL 2452699 at p. 4.

Although Defendants argue Plaintiffs do not have standing to challenge a breach of the PSA Plaintiffs urge this Court to follow the holding in *Glaski* that procedural irregularities in a foreclosure proceeding are not required to bring suit for lack of standing due to a post-closing assignment such as is the case here.

### III.    Plaintiffs' Claims Are Not Barred  By the Tender Rule Because It Does Not Apply

Defendants claim that Plaintiffs lack standing to challenge the foreclosure of their property and to seek injunctive relief because they have failed to tender the full amount due under the note.  Without Plaintiffs making such an offer or payment, Defendants argue that the tender rule acts as a complete bar against Plaintiffs' causes of action, and thus their claims should be dismissed.   However, the requirement that a borrower seeking to set aside a foreclosure sale must first tender the full amount of the debt is not an absolute rule.  In the instant case, Plaintiffs are not precluded from pursuing his causes of action for failing to tender because it would be inequitable to require tender.

A cause of action to enjoin or set aside a trustee's sale is an action in equity.  Miller & Starr California Real Estate 3d 10:212; *Tamburri v. Suntrust Mortgage, Inc*. (N.D. Cal. 2011) 2011 WL 6294472, *3.  As courts have recognized, a rigid tender rule would often entirely preclude homeowners from challenging wrongful foreclosures.  *Sacchi v. Mortgage Electronic*

1   *Registration Systems, Inc.* (C.D. Cal. 2011) 2011 WL 2533029, \*9.  Like the Plaintiffs here,

2   most homeowners do not have the funds necessary to pay off the entire balance of their loans at

3   one time.  If the tender rule was without exception, homeowners in danger of losing their home

4   through, "error or malfeasance . . . would be unable to hold on to this most precious possession

5   [home].  This would be a grossly inequitable result and would permit entities to foreclose on

6   properties without impunity."  *Sacchi,* 2011 WL 2533029 at \*9.

7           To avoid this result, and contrary to what Defendants argue, California courts have

8   recognized that an offer of "tender may not be required where it would be inequitable to do so."

9   *Onofrio v. Rice* (1997) 55 Cal. App. 4th 413, 424 (affirming trial court's grant of relief to

10  plaintiff on rescission claim although plaintiff failed to tender).  *See also Lona v. Citibank, N.A.*

11  (2011) 202 Cal. App. 4th 89, 113 ("a tender may not be required where it would be inequitable to

12  impose such a condition on the party challenging the sale"); *Sacchi,* 2011 WL 2533029 at \*10;

13  *Tamburri,* 2011 WL 6294472 at \*3; *Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285,

14  291  (recognizing "cases holding that, where a party has the right to avoid a sale, he is not bound

15  to tender any payment in redemption" adding that, "[w]hatever may be the correct rule, viewing

16  the question generally, it is certainly not the law that an offer to pay the debt must be made,

17  where it would be inequitable to exact such offer of the party complaining of the sale").

18          In the instant case, as in *Lona, Sacchi* and *Tamburri*, Plaintiffs should not be required to

19  make a full tender offer because they are challenging that Defendants lacked the legal power to

20  foreclose and requiring tender under these circumstances would be inequitable.  Where, as here,

21  Defendants are barred from initiating a foreclosure due to the fact that the NOD, Substitution of

22  Trustee, and NOTS were false and invalid and signed by someone without authority; the false

23  NOD renders any subsequent foreclosure proceedings invalid.

24          Plaintiffs are not required to tender the amount due to challenge this void foreclosure

25  sale.  *Tamburri*, 2011 WL 6294472 at \*4 ("where a sale is void, rather than simply voidable,

26  tender is not required").  As the Court found in *Dimock,* a Trustee's Deed issued by an entity

who was not the correct Trustee is void.  81 Cal. App. 4th at 876; *see also Lona*, 202 Cal. App. 4th at 113.

### IV.  Plaintiffs Stated Sufficient Facts for Breach of Contract and Implied Agreement

The NOD is false and in violation of the Series 2007-A Trust.  Plaintiffs' securitization audit indicates that JP Morgan as Servicer and Wells Fargo, as Trustee, are in breach of the PSA for the  Series 2007 ATrust and in violation of IRS Code Sec. 860G (2004, as amended).

The securitized trust must have received the Assignment of the Beneficial Interest of the Deed of Trust within 90 days of the close of the Trust, pursuant to the PSA for this Trust in or around June 29, 2007.  See Compl., Ex. A, p. 24.  In this case, there was no record of Assignment of Deed of Trust during the securitization process or in favor of Wells Fargo as Trustee until years after the securitization sale on or around June 29, 2007 took place.  See Compl., Ex. A, p. 24.  Therefore, NDEX was not acting on behalf of the true beneficiary in executing the NOD because neither NDEX or Wells Fargo, as Trustee to the Series 2007 A Trust, or JP Morgan had any way of knowing who the true beneficiaries were, the certificate holders of the Series 2007 A Trust at the time of the recording of the NOD on June 1, 2011.

Plaintiffs' Deed of Trust required the trustee to record the NOD.  Plaintiffs' Deed of Trust states that if Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the property to be sold and that Trustee shall cause this notice to be recorded in each county in which any part of the Property is located.  Plaintiffs' Deed of Trust provides that the Lender may appoint successor trustees.  This never happened in the instant matter.  In this case the NOD was recorded by NDEX who could not have been the true trustee because Stewart Title of California ("Stewart") was the original trustee under the Deed of Trust, and NDEX was not appointed by the true beneficiary.

The agency on behalf of JP Morgan and/or Wells Fargo, as Trustee, is invalid for the aforementioned reasons, therefore, in recording the foreclosure documents including the NOD,

Substitution of Trustee, and Notice of Trustee's Sale, Defendants breached the PSA for Series 2007 A Trust as well as the above-referenced provisions of Plaintiffs' Deed of Trust.

Although Defendants claim Plaintiffs were required to attach the contract in order to plead breach of contract and failed to do so, this is not required, and Plaintiffs did attach the Deed of Trust as Exhibit B.  A cause of action for breach of contract requires a pleading of (a) the contract; (b) plaintiff's performance or excuse for nonperformance; (c) defendant's breach; and (d) damage to plaintiff. It is necessary to specify that the contract is written, oral, or implied by conduct.  C.C.P. 430.10(g).

Plaintiffs alleged the substantive terms of the Deed of Trust, see Complaint at p. 5, ¶ 16, and the terms that were breached including paragraphs 22 which limit the power of sale to the Lender and proscribe notice procedures, and paragraph 24 which restricts the power to substitute the trustee to the Lender, as well.  See Complaint, pp. 7 - 10, ¶ 24 – 36.  Therefore Plaintiffs have complied with the Code of Civ. Proc. in alleging breach of contract in the complaint because in addition to pleading the contract and breach, due to entities noticing a default without having the power of sale or a proper substitution, Plaintiffs alleged they were never in default due to the irreversibly broken chain of title in the public record to the extent that Plaintiff alleged the true beneficial interest holder(s) were the certificate holders of the Series 2007-A Trust (see Complaint at p. 9, ¶ 33) and the damages to Plaintiffs including the cloud to Plaintiffs' title.  *Id.* at ¶ 35.

And Plaintiffs also alleged breach of the PSA in accordance with Code of Civ. Proc. § 430.10(g) in that Plaintiffs alleged that the PSA required the assignment to be recorded within 90 days of the close of the trust, (see Complaint, p. 9, ¶ 31); that Plaintiffs' nonperformance derived from the fact that they were to be indemnified according to the agreement; see *Id*., ¶ 32; that Defendants breached the PSA by failing to record an assignment within 90 days of June 29, 2007; and that Plaintiffs' suffered damages due to the cloud to Plaintiffs' title.  See Complaint, p. 9, ¶ 31(b).

V.     **Plaintiffs State Facts Sufficient to Support a Cause of Action for Slander of Title**

The elements of a claim for slander of title are: "1) a publication, 2) which is without privilege or justification, 3) which is false, and 4) which causes direct and immediate pecuniary loss." *Manhattan Loft, LLC v. Mercury Liquors, Inc.* (2009) 173 Cal. App. 4th 1040, 1051.

A.     **Defendants Recorded False Documents**

Defendants maintain that Plaintiffs' title was not disparaged because no false documents were recorded and thus Plaintiffs' slander of title claim must fail.  Contrary to Defendant JP Morgan, Wells Fargo, NDEX and MERS's contention, however, false documents were recorded, thus disparaging Plaintiffs' title.

The foreclosure initiated by Defendants is void due to the fact that the June 1, 2011 Notice of Default and Election to Sell ("NOD") was signed by an entity, not the true Trustee due to the intervening transfer to the Series 2007-A Trust REMIC and break in the chain of title. Because the NOD was signed by someone without authority and is thus false, it renders any subsequent foreclosure proceedings invalid.

Moreover, the June 1, 2011 NOD is invalid because NDEX executed the NOD, purportedly as Trustee, but NDEX was not in fact the Trustee under Plaintiff's Deed of Trust on that date.  The Substitution of Trustee was recorded on May 31, 2012, after the NOD was recorded.  Therefore, NDEX had no authority to record the NOD as of May 31, 2012 rendering the NOD void and without any legal force or effect.

Plaintiffs are not required to tender the amount due to challenge this void foreclosure sale.  *Tamburri*, 2011 WL 6294472 at *4 ("where a sale is void, rather than simply voidable, tender is not required").  As the Court found in *Dimock*, a Trustee's Deed issued by an entity who was not the correct Trustee is void.  81 Cal. App. 4th at 876; see also *Lona*, 202 Cal. App. 4th at 113.

The June 1, 2011 NOD is also false and invalid due to Defendants' failure to comply with the Notice and Contact requirements of California Civil Code Section 2923.5 which renders the

NOD, false, and all subsequent proceedings based on said Notice, invalid and void, including the Notice of Trustee's Sale.  See *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 236-37 (2010) (Notice of Default which fails to comply with Section 2923.5 is invalid and a non-judicial foreclosure may only proceed if a new, valid Notice of Default is recorded).  There is no statement in the NOD recorded on June 1, 2011 of compliance with Section 2923.5 and if even if there were it would be false because Defendants violated Section 2923.5 by failing to contact Plaintiffs, in person or by telephone, at least 30 days prior to recording the NOD on June 1, 2011 and/or recording a declaration attesting to compliance by a person with personal knowledge of these facts.  The statement in the NOD recorded June 1, 2011 stating (but not under penalty of perjury or with personal knowledge) that someone tried with due diligence to contact the borrower as required under Section 2923.5 and Defendants failed to exercise due diligence in attempting to contact Plaintiffs as required by Section 2923.5, and Plaintiffs were never contacted.  Furthermore, neither JP Morgan or Wells Fargo was the true beneficiary or the servicer due to the breaches of the DOT, therefore any declaration issued pursuant to Section 2923.5 would be insufficient.

The Substitution of Trustee recorded on May 31, 2012 is invalid because neither Defendant JP Morgan or Wells Fargo was the true beneficiary under the Deed of Trust and thus lacked the power to make a valid substitution.  Since the purported May 31, 2012 Substitution of Trustee failed, NDEX could not exercise any of the powers given the Trustee under Plaintiffs' Deed of Trust, including issuing a Notice of Trustee's Sale.  The recording of the Notice of Trustee's Sale was false because it was executed and recorded by NDEX, an entity that was not the true Trustee.  Thus, Defendants recorded false documents when they recorded the Substitution of Trustee and Notice of Trustee's Sale in the official records of Alameda County. The recording of these documents cast doubt on Plaintiffs' title.  Plaintiffs have suffered a direct financial loss as a result of the recordation of these false documents because they were forced to seek legal counsel to protect their interest in the Subject Property and form having their home wrongfully sold.

And finally the Assignment(s) of Deed of Trust are false due to the post-closing transfer date under *Glaski* which resulted in an irreversibly broken chain of title and due to the use of robo-signers.  Plaintiffs alleged that Ms. Fuller who signed both documents was 1) not an employee of MERS and 2) had no authority to sign documents for MERS.  See Sec. Am. Compl., p. 6 , ¶ 20-21.  These allegations may be held sufficient to state a claim of falsity. "Although there is a split of authority, this Court has recognized allegations that an individual is not an employee of MERS may call into question the validity of an assignment of a deed of trust and/or a substitution of trustee, which could then void a trustee's sale." *Newman v. The Bank of New York Mellon,* USDC EDCA Case No. 1:12-cv-1629 AWI-GSA (*citing Halajian v. Deutsche Bank Nat'l Trust Co.,* 2013 U.S. Dist. LEXIS 20341, *19-*20 (E.D. Cal. Feb. 13, 2013); *Michel v. Deutsche Bank Trust*, 2012 U.S. Dist. LEXIS 134949, *16-*19 (E.D. Cal. Sept. 20, 2012); *see also Tang v. Bank of America*, 2012 U.S. Dist. LEXIS 38642 at *33-*36.)

**B.     Defendants' Actions Were Not Privileged, and were Malicious Due to Lack of Reasonable Grounds for Belief in the Truth of the Publication**

While Defendants correctly note that the qualified common interest privilege of California Civil Code section 47(c)(1) applies to the documents required by the non-judicial foreclosure scheme, this privilege is not absolute.  Instead, the privilege only protects communications made without malice.  In this context, "malice is defined as actual malice, meaning that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights."  *Kachlon v. Markowitz* (2008) 168 Cal. App. 4th 316, 336  (citations omitted, emphasis in original).

Here, Defendants JP Morgan and Wells Fargo, as Trustee, MERS and NDEX acted with malice by recording the NOD, Substitution of Trustee, and Notice of Trustee's Sale while aware that they could not be the true beneficial interest holder of Plaintiff's Deed of Trust.  Defendant NDEX and/or JP Morgan or Wells Fargo as Trustee acting as NDEX then acted with malice by relying on the false Substitution of Trustee, to record the false Notice of Trustee's Sale.  Acting

with "[m]ere inadvertence, or careless blundering" is insufficient to prove malice, but, here Defendants acted with malice by recording these documents in reckless disregard of the facts underlying this foreclosure process. *Id*. at 344. Moreover, contrary to Defendants' contention Plaintiffs need not have pled a cause of action for fraud in order to maintain their cause of action for slander of title as each is a separate and distinct cause of action. At this stage, Plaintiffs has pled sufficient facts to show that a demurrer on the basis of privilege is unwarranted.

### C.  Plaintiff is Prejudiced by Economic Damages and Irreparable Harm

The recording of these documents cast doubt on Plaintiffs' title. Plaintiffs have suffered a direct financial loss as a result of the recordation of these false documents because they were forced to seek legal counsel to protect their interest in the Subject Property and from having their home wrongfully sold.

Plaintiffs' Complaint states that Defendants were not authorized by the true beneficiary to foreclose because they were not entitled to payment under the Deed of Trust or the recorded beneficiary in the public chain of title prior to the date of the foreclosure sale. Plaintiffs' allegations provide the basis for Plaintiffs' causes of action, and the prejudice and pecuniary harm Plaintiffs suffered as a result of JP Morgan and/or Wells Fargo as Trustee's fraudulent billings.

Further, Plaintiffs alleged the detrimental impact to the vendibility of Plaintiffs' property stating pecuniary damages sustained by Plaintiffs as a result of the wrongfully recorded foreclosure documents and the fraudulent billings. Plaintiffs alleged that the false recorded documents disclose a claim of right, title or interest in the subject property which gives rise to a need for policy endorsements for title insurance, settlement of a claim shown on a title report, and/or a significant dissuasive factor for any prospective purchaser inspecting the property for sale, and/or its disclosures, any and all of which factors negatively affected and continue to affect the purchase price of the Subject Property, and vendibility, of the Subject Property in an amount to be proven at trial.

1    The Court of Appeal has held that at least in cases such as this one where title was

2    disparaged in a recorded instrument, attorney fees and costs necessary to clear title or remove the

3    doubt placed on it by defendant's falsehoods are, by themselves, sufficient pecuniary damages

4    for purposes of a cause of action for slander of title. *Sumner Hill Homeowners' Assn., Inc. v. Rio*

5    *Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999.

6    The Court also noted that courts in other jurisdictions have directly confronted this issue

7    and have concluded that attorney fees incurred in removing the effects of slander of title are

8    recoverable as special damages even in the absence of proof of an impairment of vendibility.

9    In this matter, Plaintiffs asserted a claim of wrongful foreclosure on the basis of the

10   totality of allegations in the Complaint including facts alleged and pertaining to the false Deed of

11   Trust, and foreclosure documents which constitute violations of the California Civil Code.

12   In the instant matter, Plaintiffs were prejudiced by Defendants' assertion of the right to

13   foreclose and maintaining the false Deed of Trust recorded against Plaintiffs' property because

14   the false Deed of Trust is the foundation for Defendants' attempts to uphold a wrongful

15   foreclosure of Plaintiffs' property and the Substitution of Trustee, NOD, and Notice of Trustee's

16   Sale would remain a cloud upon Plaintiffs' title if the lawsuit were dismissed.  Without the

17   improper and false Deed of Trust, these Defendants' would not have initiated this foreclosure.

18   As the Court stated in *Tamburri*, 2011 WL 6294472 at *14, the fact that the wrong party initiated

19   a foreclosure demonstrates prejudice to the Plaintiffs.

20   The recording of the aforementioned documents made it necessary for Plaintiffs to retain

21   attorneys and to bring this action to cancel the instruments casting doubt on Plaintiffs' title, and

22   transferring Plaintiffs' title. Therefore, Plaintiffs are entitled to recover attorneys' fees and costs

23   incurred in cancelling the instrument.

24

25

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### VI.   Plaintiffs State Sufficient Facts to Support Their Wrongful Foreclosure Claim

Courts have found that "[r]egardless of whether § 2932.5 applies, Plaintiffs may still assert that only an authorized entity may initiate foreclosure.   See Cal. Civ. Code § 2924(a)(1)(requiring the notice of default to be issued by the "trustee, mortgagee, or beneficiary, or any of their authorized agents")."   *Tamburri v. Suntrust Mortgage, Inc.*, 2011 WL 6294472 *11 (N.D. Cal. 2011); *see also Robinson v. Countrywide Home Loans, Inc.*, 199 Cal.App.4th 42, 46 (2011) (holding that while a borrower may not preemptively challenge the standing of a foreclosing entity, "a borrower who believes that the foreclosing entity lacks standing to do so ... can seek to enjoin the trustee's sale or to set the sale aside") and *Sacchi v. Mortgage Electronic Registration Systems, Inc.,* 2011 WL 2533029 *9–10 (C.D.Cal. 2011) (holding that Plaintiff had stated a valid claim for wrongful foreclosure claim based on the allegation that the foreclosing entity had "no beneficial interest in the Deed of Trust when it acted to foreclose on Plaintiffs' home").   Thus, Plaintiffs may therefore assert a claim that the foreclosing parties lack any interest in the Subject Property.

Moreover, in *Lona,* the court set forth the elements of an equitable cause of action to set aside a foreclosure sale:

(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering. 202 Cal. App. 4th at 104.

Here, Plaintiffs contend that a foreclosure sale of Plaintiffs' property is illegal and oppressive because Defendants JP Morgan and/or Wells Fargo, as Trustee, MERS and NDEX were not the true beneficiary or trustee and thus lacked the power of sale.   As discussed above, JP Morgan and/or Wells Fargo, as Trustee also could not have validly substituted NDEX as the Trustee under Plaintiffs' Deed of Trust.   Plaintiffs therefore contend that NDEX is not the true

Trustee and cannot notice a Trustee's Sale, rendering the Notice of Trustee's Sale invalid.  Thus, allowing Defendant NDEX, who was not the true Trustee, to conduct a Trustee's Sale of Plaintiff's home on behalf of Defendant JP Morgan and/or Wells Fargo, as Trustee, when it was not the beneficiary, would violate the statutory scheme governing non-judicial foreclosures and caused Plaintiffs to wrongfully lose their property.  See Cal. Civ. Code § 2924 et seq.

Moreover, Defendant NDEX acted illegally to sell the Subject Property despite the fact that it was not the Trustee.  Any Trustee's Deed upon Sale recorded by NDEX, would therefore be void.  Cal. Civ. Code § 2934a; *Dimock v. Emerald Properties, Inc.* (2000) 81 Cal. App. 4th 868, 876 (holding Trustee's Sale void where it was completed by an entity who was not in fact the trustee, as the original trustee completed the sale after there had been a valid substitution of trustee).

Defendants' actions in wrongfully foreclosing on Plaintiffs' property in violation of the statutory scheme governing non-judicial foreclosures were prejudicial and harmful to Plaintiffs because these actions deprived Plaintiffs of the protection of these important statutes intended to protect borrowers and to ensure they do not wrongfully lose their homes to entities without any interest in the Subject Property.  Allowing a foreclosure completed in violation of the statutory scheme to stand would render these statutes ineffective for the very purpose for which they were enacted.  As the court stated in *Moeller v. Lien* (1994) 25 Cal. App. 4th 822, 830:

> The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.

Plaintiffs are being subjected to the foreclosure process, because Defendants were cavalier with their compliance with the non-judicial foreclosure statutes, forcing them to bring this action to protect their rights as borrowers.

As discussed above, Plaintiffs are excused from compliance with the tender rule where the sale is void. *Tamburri*, 2011 WL 6294472 at *4 ("where a sale is void, rather than simply voidable, tender is not required"). Here, the Trustee's is void because it was conducted by an entity that was not the rightful Trustee. See *Dimock*, 81 Cal. App. 4th at 876; *Lona*, 202 Cal. App. 4th at 113. Thus, Plaintiffs should be allowed to proceed with their claim for wrongful foreclosure because they have met all three elements of the *Lona* cause of action.''

### VII.   Plaintiffs Stated a Cause of Action for Violations of California Civil Code Section 2923.5

Plaintiffs' complaint is to be taken as true for the purpose of ruling on the demurrer. *Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal. App. 4th 1020, 1034. Plaintiffs' Complaint alleges the falsity of Defendant's purported notice under § 2923.5.

Plaintiffs allege that Defendants JP Morgan, Wells Fargo, MERS and NDEX violated California Civil Code Section 2923.5 (Doc. 39 p. 16-17) because the NOD was recorded without a valid statement of compliance and because Defendants failed to contact Plaintiffs, in person or by telephone, at least 30 days prior recording the Notice of Default recorded on June 1, 2011. The statement contained in the Notice of Default recorded by Defendant NDEX, stating that the mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrowers financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5 and that thirty days or more have elapsed since the borrower was contacted was false because there was no true beneficiary at that point, aside from potentially the certificate holders if any timely assignment could be produced, and because Plaintiffs were never contacted. Defendant NDEX's recordation of the Notice of Default which did not comply with Section 2923.5 was thus unfair and unlawful.

Plaintiffs further allege that Defendants' failure to comply with the Notice and Contact requirements of Section 2923.5 renders the Notice of Default and all subsequent proceedings based on said Notice, including any subsequent Notice of Trustee's Sale, invalid and void. *See*

*Mabry v. Superior Court* (2010) 185 Cal. App. 4th 208, 236-37 (Notice of Default which fails to comply with Section 2923.5 is invalid and a non-judicial foreclosure may only proceed if a new, valid Notice of Default is recorded).

And Defendants are unable to comply with California Civil Code § 2923.55 which prohibits a mortgage servicer, mortgages, trustee, beneficiary, or authorized agent to record a notice of default pursuant to Section 2924 until the mortgage servicer sends in writing to the borrower a statement that the borrower may request of the servicer, "[a] copy of any assignment, if applicable, of the borrower's mortgage or deed of trust required to demonstrate the right of the servicer to foreclose."  Defendants would not be able to comply because there is no document that would evidence such a right of the servicer due to the false assignment which failed to legally perfect the transfer to the securitized trust, because it was recorded late and in violation of the terms of the PSA.

## VIII.    Plaintiffs Have Standing Under Federal Law (That is Not Time Barred) And Have Stated Sufficient Facts Under TILA

Plaintiffs have sufficiently pled a cause of action under the Truth in Lending Act, ("TILA"), 15 U.S.C. § 1601, et.seq. in Plaintiffs' Second Amended Complaint.

Defendants violated TILA by failing to provide Plaintiffs with accurate material disclosures required under TILA and not taking into account the intent of the legislature in approving this statute which was to fully inform home buyers of the pros and cons of adjustable rate mortgages in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

Although Defendants claim the statute of limitations has run under TILA, courts have held that any and all statute[s] of limitations relating to disclosures and notices required pursuant to 15 U.S.C. § 1601, et.seq. were tolled due to Defendants' failure to effectively provide the

required disclosures and notices. *Ellis v. General Motors Acceptance Corp.,* 160 F.3d 703 (11th Cir., 1999)(consumers are not time barred from suing lender for TILA violations when the violations are concealed by misrepresentation that is not "apparent on the face" of the disclosure statement.)

As the assignee, Wells Fargo and its agents JP Morgan, NDEX and MERS, fall squarely within 15 U.S.C. § 1641(g), which creates liability for the assignee of the loans original creditor if the assignee fails to notify the borrower of the acquisition.  *See Vogan v. Wells Fargo Bank,* N.A; USDC EDCA Case No. 2:11-cv-02098-JAM-AC (Nov. 17, 2011)(unpublished).

Therefore, Plaintiffs have stated a claim under TILA and Defendants' motion should be denied.

## IX.        Plaintiffs State Facts Sufficient to Constitute a RESPA Violation

Defendants also violated RESPA by failing the Housing and Urban Development's (HUD's) 1999 Statement of Policy two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and intermediary transactions under RESPA. This test requires that total compensation be scrutinized to assure that it is reasonably related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA and that the interest and income that Defendant has gained is not disproportionate to the situation.  Defendant's failure to disclose that they will gain a financial benefit while Plaintiff(s) suffer financially as a result of the loan product, sold to Plaintiff(s) amounts to a RESPA violation under this test in that the benefit to Defendant (also while in violation of its own governing documents (the PSA), California law, Civil Code § 2932.5, and TILA) is unconscionable in the face of the detriment to Plaintiff of foreclosure and loss of equity and/or interest in the property.  Defendant violated RESPA because the payments between the Plaintiff(s) and Defendant were misleading and designed to create a windfall, and not reasonably related to services performed. These actions were deceptive, fraudulent and self-serving. Defendant's violation of the PSA indicates a breach of RESPA as stated herein due to the

unconscionability of the transaction.   The late recording of the assignment invalidates the foreclosure , due to this and other violations, despite the provisions of California Civil Code § 2934, because it is otherwise objectionable and illegal as alleged herein.

Defendants also violated RESPA by failing to respond to Plaintiffs' February 19, 2013 Qualified Written Request which was mailed by Certified Mail, Return Receipt Requested and Defendants apparently do not contest Plaintiffs' allegation that they received no response and that this itself was a violation.   See Sec. Am. Compl., p. 32, ¶ 123.   Defendants based their defense on claims that Plaintiffs' QWR correspondence does not meet the standards required by RESPA to impose any obligation on Defendants to respond, namely that Plaintiffs include in the QWR a statement that their account is in error or sufficient detail regarding other information sought by borrower. But Plaintiffs' accurately described the account such that it would be capable of being identified by Defendants by borrower, address, APN No, Trustee Sale No., and Title Order No. and recorded document no. for the Deed of Trust and the issues complained of including : increased monthly payments, principal balance, escrow payments, amounts applied and attributed toward interest; decreased amounts applied and attributed toward the principal; and increased, assessed, charged and/or collected fees, expenses, and miscellaneous extra charges Plaintiffs are not obligated to pay.   See Sec. Am. Compl.,   Ex. B, pp. 1-2.   These complaints also constitute economic damages according to proof, and from the date of the QWR, February 19, 2013, are the proximate cause of Defendants' failure to respond, and if Defendants never respond, thus, Plaintiffs must be entitled to claim these as damages.

**X. Plaintiffs State Facts Sufficient to Constitute an FDCPA Violation**

The recorded documents fail to comply with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, ("FDCPA").   Defendants are debt collectors within the meaning of the FDCPA. See 15 U.S.C. § 1692a(6), *Williams v. Wells Fargo Bank, N.A., Et al.,* 2012 U.S. Dist. LEXIS 2871 (W.D. WA, January 12, 2012); *Birster v. American Home Mortgage Servicing, Inc.,* No. 11-13574-G, U.S. App. (11th Cir.) (unpublished).   Defendants violated the FDCPA with actions pertaining to enforcement of the Note and Plaintiffs' DOT with challenged debt collection

conduct including Section 2923.5 compliance which failed to include the FDCPA Mini Miranda Warning and FDCPA 30-day validation notice requirements.  Nowhere within the Defendants correspondence or verbal communications regarding Section 2923.5 compliance, within the NOD, or otherwise, did Defendants state that "This is an attempt to collect a debt.  Any information will be used for that purpose" as required by the FDCPA.  (See Doc. 42-4, RFJN, Ex. D, NOD recorded June 1, 2011.)  Nowhere within the Defendants correspondence or verbal communications regarding Section 2923.5 compliance, within the NOD, or otherwise, did Defendants state that within 5 days of any initial communication with Plaintiffs, Defendants must notify Plaintiffs in writing, of Plaintiffs' debt validation rights.  This notice of dispute rights is required by the FDCPA regardless of the method of the debt collector's initial communication, whether it was a phone call, a letter, or even a legal summons. The debt collector's debt validation notice should have included the amount of the debt, the name of the creditor to whom the debt was owed, that Plaintiffs had 30 days to dispute the debt, notification that the Plaintiffs had the right to have the verification mailed to Plaintiffs, and notification that Plaintiffs can request the name and address of the original creditor within 30 days.  And nowhere within the Defendants correspondence or verbal communications regarding Section 2923.5 compliance, within the NOD, or otherwise, did Defendants inform Plaintiffs of her aforementioned dispute rights under the FDCPA.

Therefore, Defendants violated the FDCPA and clouded title to Plaintiffs' property by recording the false and illegal NOD.

**XI.** **Conclusion**

Plaintiffs respectfully request that the Court overrule the MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT and further respectfully request that if the Court sustains the Motion, then the Court grant Plaintiffs further leave to amend the Complaint.

DATED: November 1, 2013                    Respectfully submitted,


_____/s/  Megan Dailey_____
Megan Dailey
Attorney for Plaintiff