1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SEVERINO RIVAC, et al.,

      Plaintiffs,

      v.

NDEX WEST LLC, et al.,

      Defendants.
_____/

No. C 13-1417 PJH

**ORDER GRANTING MOTION
TO DISMISS**

    The motion of defendants JPMorgan Chase Bank, N.A. ("JPMorgan," sued as JP
Morgan Chase Bank N.A. f.k.a EMC Mortgage Corporation); Wells Fargo Bank, N.A.
("Wells Fargo"); and Mortgage Electronic Registration Systems, Inc. ("MERS") to dismiss
the claims asserted against them in the second amended complaint ("SAC") for failure to
state a claim came on for hearing before this court on December 4, 2013.  Plaintiffs
appeared by their counsel Michael Yesk, and defendants appeared by their counsel
Monique Jewett-Brewster.  Having read the parties' papers and carefully considered their
arguments and the relevant legal authority, the court hereby GRANTS the motion as
follows.

**BACKGROUND**

    In January 2007, plaintiffs Severino Rivac and Warlita Rivac borrowed $728,000,
secured by a promissory note and deed of trust on property located in San Leandro,

United States District Court

For the Northern District of California

1  California ("the property").  The deed of trust, which was recorded in the Official Records of

2  Alameda County on February 13, 2007, identified the lender as BC Bancorp and the trustee

3  as Stewart Title of California, and named MERS as beneficiary (solely as nominee for the

4  lender BC Bancorp, and the successors and assigns of BC Bancorp and MERS).

5  Plaintiffs allege that on or about June 29, 2007, BC Bancorp "securitized" and sold

6  the interest in the deed of trust to a mortgage-backed securities trust, through EMC

7  Mortgage Corporation ("EMC"), to Wells Fargo as trustee for Structured Assets Mortgage

8  Investments II, Inc. ("SAMI II"), Bread Stearns Mortgage Funding Trust 2007-AR5

9  Mortgage Pass-Through Certificates, Series 2007-AR5.  EMC retained the servicing rights,

10 and was later merged into JPMorgan.

11 On March 15, 2011, MERS, as nominee for BC Bancorp, its successors and

12 assigns, recorded an assignment of deed of trust to MERS as nominee for EMC Mortgage

13 Corporation, its successors and assigns, dated March 8, 2011.  The document bears the

14 signature of D'ne Fuller, as Assistant Secretary of MERS.  Plaintiffs assert that Fuller was

15 not employed by MERS and was in fact a "robo-signer" employed by Wells Fargo.  Also on

16 March 15, 2011, a second assignment of deed of trust was recorded, also signed by D'ne

17 Fuller, wherein MERS, as nominee for EMC Mortgage, its successors and assigns,

18 recorded an assignment of the deed of trust to Wells Fargo, as trustee for the

19 certificateholders of SAMI II.

20 On June 1, 2011, Ndex, acting as agent for Wells Fargo, recorded a Notice of

21 Default and Election to Sell under Deed of Trust in the Alameda County Recorder's Office.

22 The Notice of Default indicated that plaintiffs were $73,501.02 in arrears on their loan.  The

23 Notice of Default was signed by Shannon E. Coleman, an employee of Ndex, as agent for

24 the beneficiary, and was accompanied by a declaration of compliance with California Civil

25 Code § 2923.5, signed by Keith Shehorn, an employee of EMC.

26 On May 31, 2012, a Substitution of Trustee dated March 30, 2012, was recorded by

27 JPMorgan in favor of Ndex.  It bears the signature of Birhan Ayele as Vice President of

28 JPMorgan. Plaintiffs assert that Mr. Ayele was also a "robo-signer," with no authority to act

**United States District Court**

For the Northern District of California

1    on behalf of the true beneficiary of the deed of trust.

2        On June 8, 2012, a Notice of Trustee's Sale was recorded in the Alameda County

3    Recorder's Office by Ndex.  However, no sale occurred at that time.

4        On January 28, 2013, a second Notice of Trustee's Sale was recorded in the

5    Alameda County Recorder's Office by Ndex.  This notice indicated that the unpaid balance

6    on the plaintiffs' loan was $915,024.47.

7        On February 20, 2013, plaintiffs filed the present action in Alameda County Superior

8    Court, alleging seven causes of action against "all defendants" – (1) breach of contract, (2)

9    breach of implied agreement, (3) slander of title, (4) violation of California Civil Code

10   § 2923.5, (5) wrongful foreclosure, (6) violation of the Racketeer Influenced and Corrupt

11   Organizations Act (RICO), 18 U.S.C. § 1962, and (7) violation of California Business &

12   Professions Code § 17200.

13       On March 1, 2013, Ndex recorded a trustee's deed upon sale, indicating that the

14   property had been sold to Wells Fargo on February 21, 2013, for $933,822.37 (the amount

15   of the unpaid debt).

16       On March 29, 2013, defendants removed the action to this court.  Prior to removal,

17   on March 13, 2013, Ndex filed a Declaration of Non-Monetary Status in the state court,

18   stating its belief that it had been named as a defendant solely in its capacity as a

19   foreclosure trustee under the deed of trust, and that plaintiffs were not asserting any claims

20   for monetary relief against it.

21       On July 10, 2013, the court granted defendants' motion to dismiss, dismissing some

22   claims with prejudice and some with leave to amend.  The court directed plaintiffs to clarify

23   the bases of their claims and to allege supporting facts as to each defendant.  On August 7,

24   2013, plaintiffs filed a first amended complaint ("FAC") asserting six causes of action – (1)

25   breach of contract, (2) breach of implied agreement, (3) slander of title, (4) violation of Civil

26   Code § 2923.5; (5) violation of § 17200; and (6) injunctive relief.

27       On September 27, 2013, plaintiffs filed a second amended complaint ("SAC"),

28   alleging eight causes of action – (1) breach of contract, (2) breach of implied agreement,

**United States District Court**
For the Northern District of California

(3) slander of title, (4) wrongful foreclosure, (5) violation of § 17200, (6) violation of 15 U.S.C. § 1601, et seq. (TILA) (7) violation of 12 U.S.C. § 2605 (RESPA), and (8) violation of 15 U.S.C. § 1692, et seq. (FDCPA).

# DISCUSSION

A.   Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

Although the court generally may not consider material outside the pleadings when resolving a motion to dismiss for failure to state a claim, the court may consider matters

4

United States District Court
For the Northern District of California

1   that are properly the subject of judicial notice.  Lee v. City of Los Angeles, 250 F.3d 668,

2   688-89 (9th Cir. 2001); Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th

3   Cir. 1986).  Additionally, the court may consider exhibits attached to the complaint, see Hal

4   Roach Studios, Inc. V. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir.

5   1989), as well as documents referenced extensively in the complaint and documents that

6   form the basis of a the plaintiff's claims.  See No. 84 Employer–Teamster Joint Counsel

7   Pension Trust Fund v. America West Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

8   B.      Defendants' Motion

9          Defendants now seek an order dismissing the SAC for failure to state a claim.  They

10  argue that the securitization of the loan does not nullify defendants' right to foreclose; that

11  plaintiffs lack standing to sue because they did not tender the full amount of their

12  indebtedness and have not alleged credible tender; that plaintiffs' "holder-in-due-course"

13  claim is without merit because possession of the original note is not a requirement to

14  foreclose; that the "robo-signing" allegations are not sufficient to support any cause of

15  action alleged in the SAC; that the allegations that defendants failed to comply with the due

16  diligence requirements of Civil Code § 2923.5 cannot support any cause of action; and that

17  plaintiffs have pled no facts showing they suffered any prejudice arising from the alleged

18  wrongful foreclosure.  In addition, defendants assert that each of the eight causes of action

19  fails to state a claim.

20         1.      General arguments

21                 a.      Effect of "securitization" of loan

22         Throughout the SAC, plaintiffs allege variations on the following theme:  In June

23  2007, their loan was "securitized," which they define as "the act of producing an investment

24  vehicle of Mortgage-Backed Securities ('MBS') using the Borrower's Mortgage Note as the

25  under-lying corpus, as collateral."  SAC ¶ 12.  They assert that the "actual lenders in this

26  case, the individuals who invested in the securitized note, have not been consulted as to a

27  loan modification, foreclosure or settlement[;]" and further, that "JP Morgan and Wells

28  Fargo failed to communicate with anyone representing the actual investors" and defrauded

United States District Court

For the Northern District of California

the plaintiffs as well as the actual investors when they claimed to have done so, SAC ¶ 13; and that defendants "failed to follow the Pooling and Services Agreement ('PSA') for the securitized trust[;] failed to endorse the note and assign the deed of trust in a timely manner as set forth in the PSA[;] and failed to properly identify the true party of interest in their foreclosure action."  SAC ¶ 14.

All eight of the causes of action asserted in the SAC are based on the argument that plaintiffs' loan was improperly "securitized," thus breaking the chain of title to their mortgage, and leaving defendants without standing to enforce plaintiffs' mortgage by foreclosing on the property – with the result that the "attempts to foreclose are void and of no force and effect."  See SAC ¶¶ 15-16.

For example, in the first cause of action for breach of express agreements, plaintiffs allege that neither JPMorgan nor Wells Fargo was the lender, beneficiary, or trustee "after the sale to the securitized trust," and that they therefore breached the acceleration remedies provision of the deed of trust by causing the Notice of Default to be recorded since the Notice of Default was noticed by a trustee not authorized to act on behalf of the true beneficiaries – the certificate holders of the securitized trust.  SAC ¶ 33.  Plaintiffs also allege that defendants breached the PSA by recording the assignment four years after the June 2007 securitization, as opposed to within 90 days as required by the PSA.  SAC ¶ 39.

This theme is repeated in the second cause of action for breach of implied agreements, see SAC ¶¶ 47-51; in the third cause of action for slander of title, see SAC ¶¶ 59-61, 80; in the fourth cause of action for wrongful foreclosure, see SAC ¶¶ 84, 88-90; in the fifth cause of action for violation of § 17200, see SAC ¶ 101-102, 105-107; in the sixth cause of action for violation of TILA, see SAC ¶¶ 114-115; the seventh cause of action for violation of RESPA, see SAC ¶¶ 128-133; and in the eighth cause of action for violation of the FDCPA, see SAC ¶ 150.

Defendants contend that securitization does not nullify any rights granted under the deed of trust, including the right to foreclose.  The court agrees, and finds that any cause of action – including any claim of wrongful foreclosure – that is based on a securitization

United States District Court

For the Northern District of California

1   argument is entirely without merit.  Under California law, a secured promissory note traded

2   on the secondary market remains secured because the mortgage or deed of trust follows

3   the note.  See Cal. Civ. Code § 2936; U.S. v. Thornburg, 82 F.3d 886, 892 (9th Cir. 1996).

4         The power of sale is not nullified when a loan is securitized.  Mullins v. Wells Fargo

5   Bank, N.A., 2013 WL 5299181 at *13 (E.D. Cal. Sept. 18, 2013) (courts repeatedly reject

6   claims that a foreclosing entity lacks standing as a result of securitization of the loan); see

7   also Krug v. Wells Fargo Bank, N.A., 2011 WL 6182341 at *2 (N.D. Cal. Dec. 13, 2011);

8   Logvinov v. Wells Fargo Bank, 2011 WL 6140995 at *3 (N.D. Cal. Dec. 9, 2011); Bascos v.

9   Fed. Home Loan Mortg. Corp., 2011 WL 3157063 at *6 (C.D. Cal. July 22, 2011); Lane v.

10   Vitek Real Estate Indus. Group, 713 F.Supp. 2d 1092, 1099 (E.D. Cal. 2010); Hafiz v.

11   Greenpoint Mortg. Funding, Inc., 652 F.Supp. 2d 1039, 1043 (N.D. Cal. 2009).

12         Plaintiffs have provided no persuasive authority that would allow them to erase

13   $915,000 in debt based on the theory that the Deed of Trust and the Note were "split . . .

14   for securitization" as they argue in the opposition.  Plaintiffs rely on Glaski v. Bank of

15   America, 218 Cal. App. 4th 1079 (2013), in which a California court held that a borrower

16   may have standing to challenge a foreclosure by, or on behalf of, the holder of a note, if the

17   holder acquired the note from a party to whom it was previously assigned in what was,

18   under New York law, a void transaction.  Id. at 1095.  The issue was framed by the

19   assignment of a note to a securitized trust after the date – pursuant to which the trust was

20   formed – the trust was closed for purposes of acquiring additional assets.

21         The trust at issue was formed under New York law, which Glaski interpreted to

22   confer standing on a borrower to challenge the trust's authority to transfer title in the

23   borrower's note, which was the basis on which the later holder of the note had sought to

24   foreclose.  See id. at 1097.  However, even Glaski acknowledged that "some federal district

25   courts sitting in California have rejected the post-closing date theory of invalidity on the

26   grounds that the borrower does not have standing to challenge an assignment between two

27   other parties," before distinguishing those cases because "they do not apply New York trust

28   law to the operation of the securitized trusts in question."  Id. at 1098.

United States District Court

For the Northern District of California

1    This court is persuaded by the "majority position" of courts within this district, which

2  is that <u>Glaski</u> is unpersuasive, and that "plaintiffs lack standing to challenge noncompliance

3  with a PSA in securitization unless they are parties to the PSA or third party beneficiaries of

4  the PSA." <u>Shkolnikov v. JPMorgan Chase Bank</u>, 2012 WL 6553988 at *13 (N.D. Cal. Dec.

5  14, 2012); <u>see also</u>, <u>e.g.</u>, <u>Zapata v. Wells Fargo Bank, N.A.</u>, 2013 WL 6491377 at *2 (N.D.

6  Cal. Dec. 10, 2013); <u>Apostol v. CitiMortgage, Inc.</u>, 2013 WL 6328256 at *7 (N.D. Cal. Nov.

7  21, 2013); <u>Dahnken v. Wells Fargo Bank, N.A.</u>, 2013 WL 5979356 at *2 (N.D. Cal. Nov. 8,

8  2013); <u>Almutarreb v. Bank of New York Trust Co., N.A.</u>, 2012 WL 4371410 at *2 (N.D. Cal.

9  Sept. 24, 2012).[1]

10    b.    Effect of failure to allege tender

11    Defendants argue that plaintiffs lack standing to sue because they did not tender the

12  full amount of their indebtedness and have not alleged credible tender.  They assert that

13  the tender rule applies to all causes of action related to the foreclosure sale (including any

14  causes of action seeking damages related to any aspect of the foreclosure process).

15    "Under California law, the 'tender rule' requires, as a precondition to challenging a

16  foreclosure sale, or asserting any cause of action implicitly integrated to the sale, that the

17  borrower make a valid and viable tender of payment of the secured debt.  <u>Montoya v.</u>

18  <u>Countrywide Bank, F.S.B.</u>, 2009 WL 1813973 at *11 (N.D. Cal. June 25, 2009).  That is, a

19  party cannot challenge foreclosure proceedings without first alleging tender.  <u>Abdallah v.</u>

20  <u>United Sav. Bank</u>, 43 Cal. App. 4th 1101, 1109 (1996); <u>Arnolds Mgmt. Corp. v. Eischen</u>,

21  158 Cal. App. 3d 575, 579-80 (1984).  A cause of action is related to the foreclosure sale if

22  it challenges and/or seeks damages related to any aspect of the foreclosure process.  <u>See</u>

23  <u>Abdallah</u>, 43 Cal. App. 4th at 1109.

24

25    _____

26    [1] The court also notes that even in California courts, the holding in <u>Glaski</u> has not been adopted universally.  For example, in <u>Jenkins v. JP Morgan Chase Bank N.A.</u>, 216 Cal. App. 4th 497 (2013), the court held that borrowers lacked standing to enforce any agreements relating to the securitization of their loan.  <u>Id.</u> at 515 ("As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, [a plaintiff] lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions.").

United States District Court

For the Northern District of California

1    Here, the property was sold at a public auction on February 21, 2013.  Plaintiffs do

2  not dispute that they defaulted on the loan, and they also admit that the Notice of Default

3  was recorded on June 1, 2011 – more than a year and a half before the foreclosure sale

4  occurred.  Nevertheless, plaintiffs do not allege that they are willing and able to tender the

5  amount due on the loan, and indeed, argue in opposition to defendants' motion that the

6  tender rule does not apply to them.  Plaintiffs' inability to tender bars their attempt to set

7  aside the foreclosure sale, see Abdallah, 43 Cal. App. 4th at 1109; Arnolds Mgmt., 158 Cal.

8  App. 3d at 579, and every claim asserted in the SAC is implicitly connected to plaintiffs'

9  attempt to set aside the foreclosure sale.

10                    c.    Holder-in-due-course argument

11    Plaintiffs' holder-in-due-course argument is intertwined with their "securitization"

12  argument.  According to plaintiffs, "[t]he problem is that the original note does not have the

13  endorsements in 'wet ink' on the note.  In fact, Wells Fargo does not have the original note

14  and the original note was never endorsed properly to Wells Fargo or any other entity."

15  SAC ¶ 12.

16    Plaintiffs assert that under the terms of the PSA for the securitized trust, JPMorgan

17  and Wells Fargo were required to endorse the note and assign the deed of trust, but that

18  they failed to properly deliver the note to the trustee, with the result that the trust does not

19  own the loan and has not taken delivery of the original note.  SAC ¶¶ 14-15.  Plaintiffs also

20  claim that according to the PSA, "all promissory notes transferred to the Trust are required

21  to have a complete chain of endorsements from the original payee thereof to either "Blank"

22  or to the Trustee for the specific Trust," but that here, there is no such chain of

23  endorsements and the result is that JPMorgan and Wells Fargo are "stranger[s]" to the loan

24  and their attempts to foreclose are void and of no effect.  SAC ¶¶ 15-16.

25    Plaintiffs' assertion that defendants lacked the authority to foreclose because they

26  do not have possession of the original note is unavailing.  In California, non-judicial

27  foreclosure proceedings are exclusively governed by Civil Code § 2924, and it is well-

28  settled that § 2924 does not require possession of the original note in order to foreclose.

**United States District Court**
For the Northern District of California

1  "Under California law, there is no requirement for the production of an original promissory

2  note prior to initiation of a nonjudicial foreclosure. . . .  Therefore, the absence of an original

3  promissory note in a nonjudicial foreclosure does not render a foreclosure invalid." Pantoja

4  v. Countrywide Home Loans, Inc., 640 F.Supp.2d 1177, 1186 (N.D. Cal. 2009), quoted

5  in Herrejon v. Ocwen Loan Servicing, LLC, __ F.Supp. 2d __, 2013 WL 5934148 at *7 (E.D.

6  Cal. Nov. 1, 2013).  "Pursuant to section 2924(a)(1) of the California Civil Code, the trustee

7  of a Deed of Trust has the right to initiate the foreclosure process.  Production of the

8  original note is not required to proceed with a non-judicial foreclosure." Hafiz, 652 F. Supp.

9  2d at 1043 (citation omitted); see also Sicairos v. NDEX West, LLC, 2009 WL 385855 at *3

10  (S.D. Cal. Feb. 13, 2009).

11        Rather, "[t]he foreclosure process is commenced by the recording of a notice of

12  default and election to sell by the trustee." Moeller v. Lien, 25 Cal. App. 4th 822, 830

13  (1994).  "The trustee has the power and the duty to initiate foreclosure proceedings on the

14  property upon the trustor's default, resulting in a sale of the property." Hafiz, 652

15  F.Supp.2d at 1043 (citation omitted).  Thus, an "allegation that the trustee did not have the

16  original note or had not received it is insufficient to render the foreclosure proceeding

17  invalid." Neal v. Juarez, 2007 WL 2140640 at *8 (S.D. Cal. July 23, 2007).

18              d.    Robo-signing allegations

19        Plaintiffs also claim that the foreclosure sale was invalid because the Assignments of

20  Deed of Trust, the Substitution of Trustee, the Notice of Default, and the Declaration of

21  Compliance with California Civil Code § 2923.5 were "robo-signed." See SAC ¶¶ 20-23.

22        Defendants argue that the "robo-signing" allegations are not sufficient to support any

23  cause of action alleged in the complaint because plaintiffs have done no more than plead

24  mere conclusory allegations.

25        District courts have consistently found that conclusory allegations of robo-signing are

26  insufficient to state a claim, absent some factual support.  See Baldoza v. Bank of America,

27  N.A., 2013 WL 978268 at *13 (N.D. Cal. Mar. 12, 2013); see also Chan Tang v. Bank of

28  America, N.A., 2012 WL 960373 at *10-11 (C.D. Cal. March 19, 2012); Sohal v. Fed. Home

United States District Court

For the Northern District of California

1  Loan Mortg. Corp., 2011 WL 3842195 at *5 (N.D. Cal. Aug. 30, 2011); Chua v. IB Property

2  Holdings, LLC, 2011 WL 3322884 at *2 (C.D. Cal. Aug. 1, 2011)).

3      Here, plaintiffs have not pled a single fact to support their conclusory allegations that

4  the documents at issue were signed by robo-signers without proper authority to execute

5  those documents.  Moreover, the allegations are all made on information and belief.  Thus

6  the allegations of robo-signing cannot support any of plaintiffs' causes of action.

7      Further, where a plaintiff alleges that a document is void due to robo-signing, yet

8  does not contest the validity of the underlying debt, and is not a party to the assignment,

9  the plaintiff does not have standing to contest the alleged fraudulent transfer.  See Elliott v.

10  Mortgage Electronic Registration Systems, Inc., 2013 WL 1820904 at *2 (N.D. Cal. Apr. 30,

11  2013); Javaheri v. JPMorgan Chase Bank N.A., 2012 WL 3426278 at *6 (C.D. Cal. Aug. 13,

12  2012).  Plaintiffs here do not dispute that they defaulted on the loan payments, and the

13  robo-signing allegations are without effect on the validity of the foreclosure process.

14      e.     Allegations regarding Civil Code § 2923.5

15      Throughout the SAC, plaintiffs allege that "defendants" failed to comply with the due

16  diligence requirements of Civil Code § 2923.5.[2]  See, e.g., SAC ¶¶ 35, 47, 60-61, 65-66,

17  100.  Defendants argue that these allegations cannot support any cause of action, because

18  § 2923.5 applies only to property that is the principal residence of the borrower and is

19  security for a loan made for personal, family, or household purposes, Cal. Civ. Code §

20  2924.15(a), but plaintiffs do not include any such allegations in the SAC; because plaintiffs

21  are not entitled to equitable relief under § 2923.5, as the property has been sold, and any

22  relief under the statute is "limited to obtaining a postponement of an impending foreclosure

23  to permit the lender to comply with Section 2923.5," see Mabry v. Superior Court, 185 Cal.

24  App. 4th 208, 214 (2010); and because the allegation that defendants failed to contact

25  them prior to recording is contradicted by the Declaration of Compliance attached to the

26

27      [2]  The court notes that § 2923.5 was superceded by statute effective January 1, 2013.

28  See Rockridge Trust v. Wells Fargo, N.A., __ F.Supp. 2d __, 2013 WL 5428722 at *28 (N.D. Cal. Sept. 25, 2013).

1   Notice of Default.

2        The court agrees with defendants that plaintiffs cannot set aside the sale based on

3   an alleged violation of § 2923.5.  The property has been sold, and the remedy under that

4   statute is limited to a postponement of the foreclosure sale.  In addition, a court may

5   dispose of a claim if the allegations are expressly contradicted by the Declaration of

6   Compliance.  See Ortiz v. Accredited Home Lenders, Inc., 639 F.Supp. 2d 1159, 1166

7   (S.D. Cal. 2009).  Because the language of the Declaration tracks the language of the

8   statute, it is sufficient.  See Mabry, 185 Cal. App. 4th at 235.

9                  f.      Allegations regarding prejudice arising from foreclosure

10       Defendants argue that plaintiffs have suffered no prejudice arising from the

11  alleged wrongful foreclosure.  Under California law, to challenge a foreclosure sale

12  successfully, the plaintiff must provide evidence of failure to comply with the procedural

13  requirements for the foreclosure sale that cause prejudice to the person attacking the sale.

14  See Angell v. Superior Court, 73 Cal. App. 4th 691, 700 (1999).

15       California courts have held that absent any allegation of prejudice, plaintiffs do not

16  have standing to complain about irregularities in the foreclosure process postforeclosure.

17  See, e.g., Siliga v. Mortgage Electronic Registrations Systems, Inc., 219 Cal. App. 4th 75,

18  85 (2013) (borrowers lacked standing to complain about loan servicer's and assignee's

19  alleged lack of authority to foreclose on deed of trust where borrowers were in default

20  under the note, absent evidence that the original lender would have refrained from

21  foreclosure); Fontenot v. Wells Fargo Bank, N.A., 198 Cal. App. 4th 256, 272 (2011) (to

22  recover on wrongful foreclosure claim, borrower must demonstrate that the alleged

23  imperfection in the foreclosure process was prejudicial; no prejudice exists where borrower

24  was in default and the assignment of the loan did not interfere with the borrower's ability to

25  pay).

26       Plaintiffs have not alleged facts showing that any alleged irregularities in the process

27  caused them any harm – in particular, plaintiffs do not dispute the underlying debt, and do

28  not dispute that they defaulted on the payments.  In this case, the securitization process did

United States District Court
For the Northern District of California

1   not change the terms of plaintiffs' note (requiring payments on the loan that was secured by

2   the deed of trust) and did not change the terms of the deed of trust (particularly those

3   setting forth the beneficiary's remedies upon default).  See, e.g., Simmons v. Aurora Bank,

4   FSB, 2013 WL 5508136, *2 (N.D. Cal. Sept. 30, 2013).  Moreover, plaintiffs do not allege

5   any facts in the SAC showing that they suffered a distinct prejudice as a result of the

6   complained of irregularities in the securitization process.

7        Plaintiffs assert only that they were prejudiced by "economic damages" – based on

8   the fact that they were "forced to seek legal counsel to prove their interest in the Subject

9   Property" and is also based on the fact that their home was "wrongfully sold" – and

10  "irreparable harm."  Thus it appears that the only harm they suffered resulted from the

11  foreclosure itself.  However, plaintiffs do not dispute that the beneficiary – whomever they

12  believe he/she/it to be – was entitled to pursue foreclosure under the terms of the deed of

13  trust signed by plaintiffs in January 2007.

14        2.    Arguments regarding the causes of action pled in the SAC

15            a.    Breach of express agreement

16        In the first cause of action for breach of express agreement, plaintiffs allege that

17  "defendants" breached both the deed of trust and the PSA by foreclosing on the property

18  without the authority to do so.

19        With regard to the deed of trust, it appears that plaintiffs are claiming that following

20  the sale of the loan to the securitized trust, neither Wells Fargo nor JPMorgan was the

21  beneficiary and therefore did not have the authority under the deed of trust to appoint a

22  successor trustee.  Thus, they assert, because the Notice of Default was recorded by

23  Ndex, which plaintiffs claim was not the true trustee because it was not appointed by the

24  true beneficiary, the Notice of Default was unlawful and the resulting foreclosure sale was

25  unlawful.  Plaintiffs also allege that the Notice of Default was unlawful because it was

26  accompanied by an invalid Declaration of Compliance with Civil Code § 2923.5 which had

27  been signed by "a known robo-signer."  See SAC ¶¶ 29-37.

28        As for the PSA, it appears that plaintiffs are alleging that they were third-party

United States District Court

For the Northern District of California

1   beneficiaries to the PSA.  Plaintiffs assert that the PSA "provides a duty to defend,

2   distribution, reporting, and indemnification by and among the parties and their agents,

3   including servicers, whose agents, the trustee [sic], are contractually bound to the

4   borrower/Plaintiffs under the PSA and the DOT, and whether there was a breach needs to

5   be determined at trial."  Plaintiffs claim that they suffered pecuniary damages as a result of

6   the wrongful sale of the deed of trust to the securitized trust, because plaintiffs were forced

7   to hire attorneys to cancel the instrument.  See SAC ¶¶ 38-43

8          Defendants argue that the claim of breach of express agreement must be dismissed

9   because plaintiffs fail to allege sufficient facts to support the claim as to either the deed of

10  trust and or the PSA; and that they also lack standing to pursue this claim as to the deed of

11  trust due to their undisputed default thereunder.

12         To state a claim for breach of contract, a plaintiff must allege facts showing

13  (1) the existence of a contract, (2) that the plaintiff performed his duties under the contract

14  or was excused from doing so, (3) that the defendant breached the contract, and (4) that

15  the plaintiff suffered damages as a result of that breach.  First Comm'l Mortgage Co. v.

16  Reece, 89 Cal. App. 4th 731, 745 (2001).

17         The deed of trust granted the beneficiary the right to sell the note or a partial interest

18  in the note (together with the security interest), one or more times without prior notice to the

19  borrower.  This necessarily includes the right to securitize the loan.  Moreover, plaintiffs

20  allege no facts showing that they themselves performed under the deed of trust, and thus,

21  as a matter of law, cannot maintain a claim for breach of the deed of trust.

22         With regard to the PSA, defendants contend that plaintiffs have failed to plead any

23  facts showing that they have standing to sue under the PSA.  The general rule is that a

24  plaintiff cannot assert a claim for breach of contract against one who is not a party to the

25  contract.  See Tri-Continent Int'l Corp. v. Paris Sav. & Loan Assn., 12 Cal. App. 4th 1354,

26  1359 (1993).  For this reason, defendants argue, courts routinely dismiss claims based on

27  alleged violations of PSAs.

28         Moreover, defendants assert, even if plaintiffs had standing, which they do not, the

14

United States District Court

For the Northern District of California

1   breach of contract claim still fails because plaintiffs have not alleged sufficient facts to

2   support the claim.  Defendants contend that plaintiffs have not set forth the terms of the

3   contract verbatim in the complaint, and have not attached a copy of the written instrument

4   and specifically incorporated those terms by reference.  Defendants also assert that while

5   plaintiffs refer generally to the PSA, they do not specify which particular terms were

6   breached, and do not identify any facts showing that defendants breached the PSA.

7       A majority of district courts in California have held that borrowers do not have

8   standing to challenge the assignment of a loan because borrowers are not parties to the

9   assignment agreement.  See In re Sandri, 501 B.R. 369, 374-77 (Bkrtcy N.D. Cal. Nov. 4,

10  2013); see also Gilbert v. Chase Home Fin., LLC, 2013 WL 2318890 at *3 (E.D. Cal. May

11  28, 2013); Aniel v. GMAC Mortg., LLC, 2012 WL 5389706 at *4 (N.D. Cal. Nov. 2, 2012);

12  Ganesan v. GMAC Mortgage, LLC, 2012 WL 4901440 at *4 (N.D. Cal. Oct. 15, 2012).

13  Accordingly, the court finds that plaintiffs cannot state a claim for breach of the PSA.

14          b.    Breach of implied agreement

15      In the second cause of action for breach of implied agreement, plaintiffs allege that

16  all defendants "breached its [sic] agreement with [p]laintiffs, and with the Series 2007-AR5

17  Trust," by invoking the power of sale by recording a "false" Notice of Default; and violated

18  the PSA by failing to record assignments of the deed of trust in accordance with the terms

19  of the PSA.  SAC ¶ 47.  Plaintiffs assert that these breaches of agreements caused them to

20  incur monetary damage because they were forced to retain attorneys and to bring this

21  action seeking cancellation of instruments casting doubt on their title.  Thus, they assert,

22  they are entitled to recover attorney's fees and costs incurred in cancelling the instrument.

23  SAC ¶¶ 51-52.

24      Defendants contend that the claim of breach of implied agreement must be

25  dismissed as duplicative of the first cause of action for breach of express agreements, and

26  thus superfluous, and because it is based on the flawed theory that defendants did not

27  have the authority to foreclose because the loan was improperly securitized.

28      The court agrees that this claim restates the cause of action for breach of express

15

United States District Court

For the Northern District of California

1   agreements, and it is thus dismissed as duplicative.  Moreover, it is predicated almost

2   entirely on the defendants' alleged violations of the PSA.  Plaintiffs have no standing to

3   assert a claim of breach of the PSA because they were not parties to the PSA, and

4   because it is related to the securitization process.

5         c.     Slander of title

6        In the third cause of action for slander of title, plaintiffs allege that the foreclosure

7   was unlawful because the foreclosure documents were robo-signed; because defendants

8   lacked authority to record the foreclosure documents, since the loan was securitized; and

9   because the Notice of Default does not comply with the FDCPA.

10        Slander of title is a tortious injury to property resulting from unprivileged, false,

11   malicious publication of disparaging statements regarding the title to property owned by

12   plaintiff, to plaintiff's damage.  <u>Southcott v. Pioneer Title Co.</u>, 203 Cal. App. 2d 673, 676

13   (1962); <u>see also</u> <u>Sumner Hill Homeowners' Ass'n, Inc. v. Rio Mesa Holdings, LLC</u>, 205 Cal.

14   App. 4th 999, 1030 (2012) (reciting elements of cause of action).

15        Defendants assert that the claim for slander of title must be dismissed because

16   plaintiffs allege no facts sufficient to show that defendants published any false information;

17   and because the allegations regarding "robo-signing" and defendants' authority to foreclose

18   are wholly without merit and cannot support any cause of action.  Moreover, defendants

19   assert, because defendants are not "debt collectors" within the meaning of the FDCPA,

20   plaintiffs' allegations of FDCPA violations cannot support a slander of title claim.

21        Finally, defendants contend, even if plaintiffs could show that defendants published

22   false documents (which they have not), plaintiffs fail to allege facts sufficient to show that

23   defendants acted with actual malice, which is required to overcome the "common interest

24   privilege" of Civil Code § 47(c)(1).

25        The court finds that plaintiffs have not alleged facts showing unprivileged publication

26   of false documents, and have not alleged any facts showing actual malice, such that the

27   common interest privilege can be set aside.  Moreover, the claim is based on alleged

28   violations of the PSA and errors in the securitization process.  As discussed above,

United States District Court
For the Northern District of California

1    plaintiffs are barred from basing their claim on this theory.

2              d.    Wrongful foreclosure

3         In the fourth cause of action for wrongful foreclosure, plaintiffs assert that the

4    foreclosure was invalid because Ndex was not yet substituted in as of the June 1, 2011

5    Notice of Default; that there was never any valid substitution of trustees because Birhan

6    Ayele was a "robo-signer" and did not have the authority to sign on behalf of JPMorgan;

7    and that the Substitution of Trustee recorded on May 31, 2012 was invalid because Ndex

8    was not the true trustee.

9         Defendants argue that the claim for wrongful foreclosure must be dismissed

10   because the claim is based on the groundless theory that defendants lacked the authority

11   to foreclose on the property.

12        A nonjudicial foreclosure sale is presumed to have been conducted regularly and

13   fairly.  See, e.g., Nguyen v. Calhoun, 105 Cal. App. 4th 428, 444 (2003).  To state a cause

14   of action for wrongful foreclosure, a plaintiff must allege facts showing that the trustee or

15   mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property

16   pursuant to a power of sale in a mortgage or deed of trust; (2) that the party attacking the

17   sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in

18   actions where the trustor or mortgagor challenges the sale, that the trustor or mortgagor

19   tendered the amount of the secured indebtedness or was excused from tendering.  Lona v.

20   Citibank, N.A., 202 Cal. App. 4th 89, 104 (2011).

21        Here, plaintiffs again assert violations of the PSA and errors in the securitization

22   process, as well as improper "robo-signing," as a basis for this claim.  See, e.g., SAC

23   ¶¶ 84-90.  For the reasons stated above, plaintiffs are barred from relying on these

24   theories.  This claim also fails because plaintiffs have not alleged the ability or willingness

25   to tender the loan proceeds.  A defaulted borrower is "required to allege tender of the

26   amount of [the lender's] secured indebtedness in order to maintain any cause of action for

27   irregularity in the sale procedure."  Abdallah, 43 Cal. App. 4th at 1109; Arnolds

28   Management, 158 Cal. App. 3d at 580.

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

e.     Violation of § 17200

In the fifth cause of action for violation of Business & Professions Code § 17200, plaintiffs allege that "defendants" engaged in "unlawful" business activities.  It does not appear that plaintiffs are asserting a claim of either "unfair" or "fraudulent" business practices.

Plaintiffs assert that defendants violated § 17200 by, among other things, violating Civil Code § 2923.5 by failing to contact plaintiffs at least 30 days before initiating foreclosure proceedings; foreclosing without authority by filing a "false" Notice of Default which also "failed to comply with Section 2923.5;" violating Civil Code § 2924, et seq. by allowing Ndex (allegedly not the rightful trustee) to proceed with the foreclosure sale; and improperly recording foreclosure documents when plaintiffs were never in default "due to the break in the chain of title."

Defendants contend that the § 17200 claim must be dismissed because plaintiffs lack standing to assert a UCL claim, as they fail to identify any specific pecuniary damage they have suffered; because plaintiffs cannot base their UCL claim on an alleged violation of § 2923.5, and in any event, any remedy would be limited to a postponement of the foreclosure sale (which already occurred more than nine months ago); because plaintiffs have failed to allege facts with reasonable particularity in support of their UCL claim; and because plaintiffs have alleged no statutory violation in a viable claim.

Plaintiffs' § 17200 claim is predicated on alleged violations of Civil Code § 2323.5, and on alleged violations of the PSA and errors in the securitization process.  Because plaintiffs cannot maintain a claim under any of those theories, the § 17200 claim must also be dismissed.

f.     Violation of TILA

In the sixth cause of action for violation of TILA, plaintiffs allege that defendants failed to provide plaintiffs with accurate material disclosures required under an unidentified section of TILA, SAC ¶ 112; that defendants violated 15 U.S.C. § 1641(g) by failing to notify them in writing within 30 days when the beneficial interest in the loan was reassigned, SAC

18

United States District Court

For the Northern District of California

¶ 113; and that Ndex violated TILA by violating some provision of the PSA, see SAC ¶ 114. They also assert that any applicable statutes of limitations relating to "disclosures and notices" were "tolled" due to defendants' "failure to effectively provide the required disclosures and notices."  SAC ¶ 116.

Defendants assert that the TILA claim regarding alleged improper disclosures must be dismissed because it is time-barred.  Plaintiffs entered into the loan agreement in 2007, six years before they filed the present action.  Any TILA claim for which the plaintiffs seek damages must be filed within one year of the date of the transaction, 15 U.S.C. § 1640(e); and the statute of limitations for rescission under TILA is three years and is not subject to tolling, 15 U.S.C. § 1635(f).  Defendants also assert that plaintiffs have failed to plead any facts regarding the alleged improper loan disclosures – i.e., how defendants violated the statute.

Second, defendants argue that any claim based on an alleged failure to notify them when the mortgage was sold or otherwise transferred and assigned to a third party, under 15 U.S.C. § 1641(g), is barred because that provision did not go into effect until May 20, 2009, while the SAC alleges that plaintiffs' loan was securitized in 2007.  Thus, defendants assert, because the statute was not in effect when the loan was securitized, plaintiffs' claim cannot survive the pleading stage.  As a further basis for dismissing this part of the TILA claim, defendants contend that it fails to state a claim because it does not allege actual damages or the payment of unnecessary finance charges related to the violation.

The court finds that the TILA claim must be dismissed as time-barred.  The claim for rescission is not subject to tolling, and plaintiffs have alleged no facts supporting their assertion that the claim for improper disclosures should be tolled.  In addition, plaintiffs failed to respond to defendants' argument that § 1641(g) did not become effective until May 2009, two years after the securitization.

g.    Violation of RESPA

In the seventh cause of action for violation of RESPA, plaintiffs allege that on February 19, 2013, they submitted a Qualified Written Request ("QWR") to Wells Fargo

United States District Court

For the Northern District of California

and JPMorgan, seeking resolution of "loan servicing disputes."  Plaintiffs assert that Wells Fargo and JPMorgan failed to respond within 60 days of receiving the QWR, thus violating 12 U.S.C. § 2605(e)(2).

Defendants argue that the RESPA claim must be dismissed because plaintiffs allege no facts showing that the submitted request qualified as a QWR under RESPA, and allege no facts showing that they suffered "actual damages" as a result of defendants failure to respond to the purported QWR.

Under the statute, a QWR is a "written correspondence" that "includes, or otherwise enables the servicer to identify the name and account of the borrower," and that also includes "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B).

Here, the QWR made a number of demands, including that Wells Fargo and JPMorgan provide the "name and address of Note holder;" that Wells Fargo and JPMorgan provide plaintiffs with "evidence" of "the original un-certificated [sic] or certificated [sic] security regarding Deed of Trust recorded as Document No. 2007068834," stating that if defendants did not provide "the very security," it would prove that "you never really created and owned one;" that Wells Fargo and JPMorgan provide "a chain of transfer from you to wherever this security is now," stating that "[a]bsent the actual evidence of the security, I have no choice but to dispute the validity of your actual ownership, funding, entitlement right, and the current debt you say I owe;" and that Wells Fargo and JPMorgan provide "a complete exam, audit, review and accounting of this mortgage account from its inception through the present date."

With regard to the statutory requirements, while the QWR may have sufficiently identified the borrowers and the account, it did not include a statement of the reason for the belief of the borrowers that the account was in error.  It simply speculated that, because of "potential abuses" by Wells Fargo and JPMorgan or "previous servicing companies," there might have been unwarranted charges applied to the account, and it demanded that Wells

United States District Court

For the Northern District of California

1   Fargo and JPMorgan "insure [sic] that I have not been the victim of such predatory

2   servicing and lending practices."

3       RESPA sets forth requirements for the servicing of mortgage loans, and among

4   other things, requires a loan servicer to respond to a QWR from a borrower.  The statute

5   provides that whoever fails to comply with this requirement "shall be liable to the borrower

6   . . . [for] any actual damages . . . as a result of the failure." 12 U.S.C. § 2605(f)(1)(A).

7   Courts have interpreted § 2605(f) to require plaintiffs to, "at a minimum, also allege that the

8   breach resulted in actual damages." Allen v. United Fin. Mortg. Corp., 660 F.Supp. 2d

9   1089, 1097 (N.D. Cal. 2009).  Moreover, any injury must be "a result of the failure" to

10  comply with RESPA.  12 U.S.C. § 2605(f)(1)(A).

11      That is, a plaintiff is required to plead specific facts showing both the defendant's

12  failure to respond and the plaintiff's suffering of "pecuniary damages" in order to avoid the

13  dismissal of his or her RESPA claim. Allen, 660 F.Supp. 2d at 1097.  This pleading

14  requirement limits RESPA claims to circumstances in which a plaintiff can allege specific

15  facts to show causation – "actual damages to the borrower as a result of the failure [to

16  comply with RESPA requirements]." Lal v. Am. Home Servicing, Inc., 680 F.Supp. 2d

17  1218, 1223 (E.D. Cal. 2010); see also Tamburri v. Suntrust Mortg., Inc., 875 F.Supp. 2d

18  1009, 1014 (N.D. Cal. 2012); Jenkins, 216 Cal. App. 4th at 531-32.

19      The QWR appears to have demanded all records related to plaintiffs' loan and a full

20  accounting of all payments and fees on their loan.  However, as of the date plaintiffs sent

21  the letter on February 19, 2013, they had long since stopped making payments on the loan;

22  and Notices of Default and Notices of Trustee's Sale had been recorded.  Plaintiffs do not

23  claim they failed to make the payments because of issues with the servicing of the loan or

24  that they would have made future payments if defendants had given them the servicing

25  information they requested.

26      More importantly, plaintiffs sent JPMorgan and Wells Fargo the QWR on February

27  19, 2013; plaintiffs filed their complaint in this action on February 20, 2013; and the

28  property was sold in the trustee's sale on February 21, 2013.  So at the same time that they

United States District Court

For the Northern District of California

1  were asking for some relief under RESPA, they also filed a legal action in this court.  Two

2  days after they submitted the QWR, they no longer owned the property, and the loan was

3  no longer in effect.

4      Any damages suffered by plaintiffs resulted from their failure to make the payments

5  on the loan, and were not related to the alleged violation of RESPA, given that the

6  foreclosure sale took place long before the time to respond to the QWR had elapsed.

7  Thus, the RESPA claim fails and the defects cannot reasonably be cured by amendment.

8          h.      Violation of the FDCPA

9      In the eighth cause of action for violation of the FDCPA, plaintiffs allege that

10  "defendants" are debt collectors within the meaning of the FDCPA, and that they violated

11  the FDCPA by failing to provide the FDCPA "Mini-Miranda" warning (notice that they are

12  "debt collectors" and are attempting to collect on a debt) on the Notice of Default.

13      Defendants contend that the FDCPA claim must be dismissed because they are not

14  debt collectors under the statute.  They also argue to the extent that plaintiffs are

15  attempting to base this claim on the allegations that defendants failed to comply with Civil

16  Code § 2923.5, that statute cannot provide a basis for another cause of action, for the

17  reasons explained above – including that the property has already been sold.

18      In addition, the general rule followed by most courts is that the activity of foreclosing

19  on a property pursuant to a deed of trust – including the activity of providing notice of a

20  foreclosure sale to a consumer – is not collection of a debt within the meaning of the

21  FDCPA.  See, e.g., Garcia v. Mortgage Sense, Inc., 2013 WL 6190377 at *5 (C.D. Cal.

22  Nov. 25, 2013); Barocio v. Bank of America, N.A., 2012 WL 3945535 (N.D. Cal. Sept. 10,

23  2012; Medina v. EMC Mortg. Corp., 2010 WL 2573006 at *3 (N.D. Cal. 2010); Nera v. Am.

24  Home Mortg. Serv., Inc., 2009 WL 2423109, at *4 (N.D. Cal. Aug. 5, 2009); Izenberg v.

25  ETS Services, LLC, 589 F.Supp.2d 1193, 1199 (C.D. Cal. 2008); Hulse v. Ocwen Federal

26  Bank, FSB, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002).

27      Finally, at least as to JPMorgan and Wells Fargo, they are creditors or loan

28  servicers, not debt collectors.  See 15 U.S.C. § 1692a(4).  The FDCPA applies only to debt

22

United States District Court
For the Northern District of California

1  collectors engaging in conduct that constitutes "debt collection" under the act.  A "debt

2  collector" is generally defined as "any person who uses any instrumentality of interstate

3  commerce or the mails in any business the principal purpose of which is the collection of

4  any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed

5  or due or asserted to be owed or due to another."  15 U.S.C. § 1692a(6).  And a "debt" is

6  defined as "any obligation or alleged obligation of a consumer to pay money arising out of a

7  transaction in which the money, property, insurance, or services which are the subject of

8  the transaction are primarily for personal, family, or household purposes, whether or not

9  such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).

10      Thus, this claim fails as a matter of law.  When it forecloses on a property, the

11  trustee is merely exercising its power of sale under the deed of trust "after a breach of the

12  obligation for which the transfer in trust of the interest in real property is security."  Hulse,

13  195 F.Supp. 2d at 1204.  The trustee is not attempting to collect funds from the debtor to

14  enforce the obligation.  Id.; see also Khast v. Washington Mut. Bank, 2011 WL 940792 at

15  *3 (S.D. Cal. Mar.16, 2011).

16                                    **CONCLUSION**

17      In accordance with the foregoing, defendants' motion is GRANTED.[3]  Because the

18  SAC represents plaintiffs' third attempt to state a claim, and because the court finds that

19  amendment will not cure the deficiencies identified above, the dismissal is WITH

20  PREJUDICE.

21      In particular, the entire SAC is premised on the theory that plaintiffs' loan was

22  improperly securitized, thus breaking the chain of title to his mortgage, and leaving

23  defendants without standing to foreclose on the property.  As detailed above, plaintiffs lack

─────────────────────

25  [3]  Ndex did not join in the motion.  However, as noted above, Ndex filed a Declaration
    of Non-Monetary Status in the Alameda County Superior Court prior to removal.  California
26  Civil Code § 2924l permits a trustee to declare non-monetary status if the trustee "maintains
    a reasonable belief that it has been named in the action or proceeding solely in its capacity as
27  trustee and not arising out of any wrongful acts or omissions on its part in the performance of
    its duties as trustee." Cal. Civ.Code § 2929l(a). If there is no objection to the declaration within
28  15 days of filing, the trustee gains non-monetary status.  See Cal. Civ. Code § 2929l(d).

standing to allege violations of the PSA or defects or errors in the securitization process.

Moreover, the securitization of the loan did not nullify the defendants' right to foreclose on

the property.

**IT IS SO ORDERED.**

Dated:  December 17, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court

For the Northern District of California

24