1
2
3
4            UNITED STATES DISTRICT COURT
5            NORTHERN DISTRICT OF CALIFORNIA
6
7    SEVERINO RIVAC, et al.,
8                   Plaintiffs,                    Case No.  13-cv-1417-PJH
9         v.
                                                  **ORDER VACATING JANUARY 2, 2014,**
10   NDEX WEST, LLC, et al.,                       **JUDGMENT; ORDER DENYING**
                                                  **RECONSIDERATION OF ORDER**
11                  Defendants.                    **GRANTING MOTION TO DISMISS**
                                                  **SECOND AMENDED COMPLAINT**
12
13
14         This matter is before the court for reconsideration of the order of dismissal and the

15   judgment entered in the above-entitled action on January 2, 2014.  Plaintiffs Severino

16   Rivac and Warlita Rivac obtained a loan in 2007, evidenced by a promissory note and

17   secured by a Deed of Trust on real property located in San Leandro, California ("the

18   property").  After plaintiffs defaulted on the loan payments, the property was sold at a

19   non-judicial foreclosure sale in February 2013.

20         Plaintiffs filed the original complaint on February 20, 2013, against defendants

21   NDeX West LLC ("NDeX West"); JPMorgan Chase Bank, N.A. ("JPMorgan" –

22   erroneously sued as JP Morgan Chase Bank f.k.a. EMC Mortgage Corporation); Wells

23   Fargo Bank, N.A. ("Wells Fargo"); and Mortgage Electronic Registration Systems, Inc.

24   ("MERS").  Plaintiffs asserted numerous causes of action, including a claim of wrongful

25   foreclosure.  Plaintiffs alleged that the assignment of the promissory note and deed of

26   trust was void, and that the entity that had conducted the nonjudicial foreclosure sale thus

27   had no interest in the underlying debt or in the property.

28         After the court granted defendants' motion to dismiss the second amended

United States District Court
Northern District of California

1   complaint ("SAC") on December 17, 2013, without leave to amend, and entered judgment

2   on January 2, 2014, plaintiffs filed a notice of appeal.  On October 6, 2016, without

3   having ruled on the appeal, the Ninth Circuit remanded the case to this court "to

4   reconsider its holding in light of" the California Supreme Court's February 18, 2016,

5   decision in Yvanova v. New Century Mortgage Corp., 62 Cal. 4th 919 (2016).  Pursuant

6   to this court's order, the parties submitted supplemental briefs.

7       Having read the parties' papers and carefully considered their arguments and the

8   relevant legal authority, the court DENIES reconsideration and finds that the SAC was

9   properly dismissed.

10                                    **BACKGROUND**

11      In January 2007, plaintiffs Severino Rivac and Warlita Rivac borrowed $728,000

12  secured by a promissory note and deed of trust on property located in San Leandro,

13  California.  The Deed of Trust listed the lender as BC Bancorp, and named Stewart Title

14  of California as trustee and Mortgage Electronic Registration Systems, Inc. ("MERS") as

15  beneficiary.  The Deed of Trust stated that MERS was "acting solely as a nominee for"

16  the lender (BC Bancorp) and the lender's successors and assigns.  On February 13,

17  2007, Stewart Title recorded the Deed of Trust with the Alameda County Recorder, as

18  Instrument No. 2007068834.

19      The Deed of Trust provided that "[t]he Note or a partial interest in the Note

20  (together with this Security Instrument) can be sold one or more times without prior notice

21  to Borrower."  The Deed of Trust further provided that "Lender, at its option, may from

22  time to time appoint a successor trustee to any Trustee appointed hereunder by an

23  instrument executed and acknowledged by Lender and recorded in the office of the

24  Recorder of the county in which the Property is located. . . .  Without conveyance of the

25  Property, the successor trustee shall succeed to all the title, powers, and duties conferred

26  upon the Trustee herein and by Applicable Law. . . ."

27      Plaintiffs assert that BC Bancorp "securitized" and "sold" the interest in plaintiffs'

28  Deed of Trust to a mortgage-backed securities trust, through EMC Mortgage Corporation

United States District Court
Northern District of California

2

("EMC"), to Wells Fargo Bank, N.A., as trustee for Structured Assets Mortgage Investments II, Inc., Bear Stearns Mortgage Funding Trust 2007-AR5 Mortgage Pass-Through Certificates, Series 2007-AR5 ("SAMI II 2007-AR5 Trust"). EMC (later merged into JPMorgan Chase Bank, N.A. ("JPMorgan")) retained the servicing rights. Plaintiffs allege that "according to [p]laintiffs' audit" (an apparent reference to the 125-page "Audit and Analysis," discussed below, which was attached to the original complaint), the closing date of the SAMI II 2007-AR5 Trust was June 29, 2007.

At some point, plaintiffs fell behind with the loan payments, and defaulted on the loan. On March 15, 2011, MERS recorded two assignments of Deed of Trust. In the first assignment, MERS, acting as nominee for BC Bancorp, recorded, in the Alameda County Recorder's Office, an assignment of "all beneficial interest" under the Deed of Trust (Instrument No. 2007068834), in favor of MERS as nominee for EMC. The document bears the signature of D'ne Fuller, as Assistant Secretary of MERS, and the assignment was dated March 8, 2011. Plaintiffs assert that Fuller was in fact a "robo-signer" employed by Wells Fargo. In the second assignment, MERS, as nominee for EMC, recorded an assignment of "all beneficial interest" under the Deed of Trust (Instrument No. 2007068834), also signed by D'ne Fuller, to Wells Fargo, as trustee for the certificateholders of SAMI II 2007-AR5 Trust ("second assignment"). That second assignment, which was recorded subsequent to the recording of the first assignment, was also dated March 8, 2011.

On June 1, 2011, NDeX West LLC ("NDeX"), acting as agent for Wells Fargo (JPMorgan), recorded a Notice of Default and Election to Sell under Deed of Trust in the Alameda County Recorder's Office. The Notice of Default indicated that plaintiffs were $73,501.02 in arrears on their loan payments. The Notice of Default was signed by Shannon E. Coleman, an employee of NDeX, as agent for the beneficiary, and was accompanied by a declaration of compliance with California Civil Code § 2923.5, signed by Keith Shehorn, an employee of EMC.

On May 31, 2012, a Substitution of Trustee was recorded by Wells Fargo

(JPMorgan) in favor of NDeX.  It bears the signature of Birhan Ayele as Vice President of JPMorgan. Plaintiffs allege that Mr. Ayele was also a "robo-signer," with no authority to act on behalf of the true beneficiary of the Deed of Trust.  On June 8, 2012, a Notice of Trustee's Sale was recorded in the Alameda County Recorder's Office by NDeX.  However, no sale was conducted at that time.

On January 28, 2013, another notice of Trustee's Sale was recorded in the Alameda County Recorder's Office by NDeX.  This notice indicated that the unpaid balance on the plaintiffs' loan was $915,024.47, and that the sale would go forward on February 21, 2013.

Plaintiffs filed the original complaint on February 20, 2013, against NDeX; JPMorgan (erroneously sued as JP Morgan Chase Bank f.k.a. EMC Mortgage Corporation); Wells Fargo; and MERS.  Plaintiffs alleged seven causes of action – breach of contract; breach of implied agreement; slander of title; violation of California Civil Code § 2923.5; wrongful foreclosure; violation of 18 U.S.C. § 1962 ("RICO"); violation of California Business & Professions Code § 17200; and injunctive relief.  Attached as an exhibit to the complaint was a 125-page document entitled "Mortgage Securitization Audit & Analysis Report," dated October 29, 2012, prepared by a third party identified as "Certified Securitization Analysis LLC."  Plaintiffs asserted that this document should be incorporated by reference into the complaint.  On March 1, 2013, NDeX recorded a Trustee's Deed Upon Sale, indicating that the property had been sold to Wells Fargo on February 21, 2013.

On May 15, 2013, defendants filed a motion to dismiss, which was granted on July 10, 2013.  The court found that the complaint did not allege facts sufficient to state a claim under any of the causes of action.  The court found further that the facts alleged in the complaint were not related in any comprehensible way to any facts in the attached 125-page "Audit and Analysis," which also contained large portions that were illegible. The court noted that the facts asserted in the complaint all appeared to relate in one way or another to the "securitization" of the loan, and the foreclosure process, but indicated

that it was not possible to tell which defendant was alleged to have done what.

The court granted leave to amend as to all causes of action except the RICO claim, and stated that "[p]laintiffs must clarify the bases of the claims, and must allege supporting facts as to each defendant."  The court added, "As indicated at the hearing, the court will not consider the 125-page alleged 'expert report' as part of an amended complaint."

Plaintiffs filed the first amended complaint ("FAC") on August 7, 2013.  Defendants filed a motion to dismiss on September 13, 2013, and on September 27, 2013, plaintiffs filed a second amended complaint ("SAC").  The court terminated the motion to dismiss the FAC and allowed the filing of the SAC, on the basis that plaintiffs had not previously used their one opportunity to amend "as a matter of course."

In the SAC, plaintiffs alleged causes of action for (1) breach of contract; (2) breach of implied agreement; (3) slander of title; (4) wrongful foreclosure; (5) violation of § 17200, (6) violation of the Truth in Lending Act, 15 U.S.C. § 1601, et seq. ("TILA"); (7) violation of the Real Estate Settlement Practices Act, 12 U.S.C. § 2601, et seq. ("RESPA"), and (8) violation of the Federal Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA").  Plaintiffs did not attach the 125-page "Audit and Analysis Report," but did refer throughout the SAC to "plaintiffs' audit," without any clear explanation.

On October 18, 2013, defendants filed a motion to dismiss the SAC.  The court granted the motion in an order issued on December 17, 2013.  Because the court found that amendment would be futile, the dismissal was with prejudice.

On January 2, 2014, the court issued an order dismissing nominal defendant NDeX (based on plaintiffs' statement of non-opposition to that dismissal).  Also on January 2, 2014, the court entered judgment in favor of defendants.

On January 31, 2014, plaintiffs filed a notice of appeal.  Plaintiffs listed the issues for review as whether the court had erred in ruling that each of their eight causes of action failed to allege facts sufficient to state a claim, and whether the court had erred in

1   denying further leave to amend.  Nevertheless, their arguments in the appeal all relied on

2   their legal conclusion that the foreclosure sale was "void."  In support of this proposition,

3   plaintiffs argued that the assignments of the loan during securitization were untimely or

4   were not recorded, which allegedly destroyed the chain of title to the loan and with it, the

5   authority of any of the defendants to foreclose; and that the recorded assignments were

6   void because the person who signed them was a "robo-signer" and lacked authority.

7          After the briefing was completed and the appeal was scheduled for oral argument,

8   the Ninth Circuit panel vacated the hearing date and indicated that submission of the

9   case was being "deferred pending the California Supreme Court's decision" in Yvanova

10  (which had been issued on February 18, 2016).  The Ninth Circuit requested the parties

11  to submit supplemental briefs addressing the application of the Yvanova decision to the

12  case.  Both briefs were filed by the May 18, 2016 due date.

13         On October 6, 2016, the Ninth Circuit panel issued an order stating that the case

14  was submitted for decision.  That same day, the panel remanded the case to this court to

15  reconsider its holding in light of the Yvanova decision, adding, "We express no opinion as

16  to the outcome of that inquiry."

**DISCUSSION**

17

18  A.     Allegations in the SAC

19         Throughout the SAC, plaintiffs alleged variants on the theme that the

20  "securitization" of their loan was "improper."  Plaintiffs asserted that in June 2007, their

21  loan was "securitized," which they defined as "the act of producing an investment vehicle

22  of Mortgage-Backed Securities ("MBS") using the Borrower's Mortgage Note as the

23  under-lying corpus, as collateral."  SAC ¶¶ 12, 33.  They claimed that their loan was "split

24  from the Deed of Trust for securitization," and that they "obtained an Audit evidencing

25  [the] loan transaction both as it actually occurred and as it was fraudulently portrayed in

26  the securitization documents filed with the SEC[,]" including the Pooling and Servicing

27  Agreement ("PSA"), the Prospectus, and the Forms 10-K, 10-Q, 8-K, and 15-D.  SAC

28  ¶¶ 12-14.

United States District Court
Northern District of California

United States District Court
Northern District of California

1      Plaintiffs asserted that "the actual lenders in the case, the individuals who invested

2   in the securitized note, have not been consulted as to a loan modification, foreclosure or

3   settlement" and further, that "JP Morgan and Wells Fargo failed to communicate with

4   anyone representing the actual investor, and committed fraud on both the [p]laintiffs and

5   the actual investors when they claimed to have done so."  SAC ¶ 13.

6      Plaintiffs alleged that defendants "failed to follow the [PSA] for the securitized trust,

7   failed to endorse the note and assign the deed of trust in a timely manner as set forth in

8   the PSA, and failed to properly identify the true party of interest in their foreclosure

9   action."  SAC ¶ 14.  They claimed that under the terms of the PSA, all promissory notes

10  transferred to the Trust were required to have a "complete chain of endorsements" by no

11  later than 90 days after the Trust's closing date, and that because these conditions were

12  not complied with, the servicer in the present case was "trying to force through a

13  foreclosure in the name of a beneficiary that clearly [had] no interest in the underlying

14  loan as it had previously been sold."  SAC ¶ 15.

15     Plaintiffs also asserted that the closing date for the SAMI II 2007-AR5 Trust was

16  on or about June 29, 2007, and that the Trust was no longer reporting income as of 2008.

17  SAC ¶ 72.  They alleged that their Note and Deed of Trust was securitized "on or before

18  June 29, 2007, and was sold to a Real Estate Mortgage Investment Conduit (REMIC) [1]

19  "according to [p]laintiffs' audit" (apparently a reference to the 125-page document

20  attached as an exhibit to the original complaint).  SAC ¶ 73.

21     Plaintiffs alleged, however, that any assignment of a beneficial interest of a deed

22  of trust occurring in 2011 (as here) or later, could not have REMIC status, and the

23  advantageous tax treatment associated therewith, because under the terms of the PSA,

24  the securitized trust must have received the assignments of the beneficial interest of the

25  _____

26  [1]  A real estate mortgage investment conduit or REMIC is a pass-through vehicle created
    under the Tax Reform Act of 1986 to issue multiclass mortgage-backed securities.

27  REMICs may be organized as corporations, partnerships, or trusts, and those meeting
    qualifications are not subject to double taxation (taxation of earnings at the corporate

28  level, then again at the level of individual shareholders).  See J.Downes & J.E. Goodman,
    Dictionary of Finance and Investment Terms (Barron's 9th ed. 2014) at 206, 619-20.

1    Deed of Trust within 90 days of the close of the trust (June 29, 2007).  SAC ¶¶ 71-72.

2    They asserted that in recording the assignments in 2011, defendants breached the PSA

3    as well as the terms of plaintiffs' Deed of Trust.  SAC ¶ 73.  Based on this, plaintiffs

4    claimed that defendants did not have the authority to foreclose on the property – and that

5    the "attempts to foreclose are void and of no force and effect."  SAC ¶ 16.

6        Plaintiffs raised this "improper securitization" issue in each of the eight causes of

7    action asserted in the SAC.  For example, in the first cause of action for breach of

8    express agreements, they alleged that neither JPMorgan nor Wells Fargo was the lender,

9    beneficiary, or trustee "after the sale to the securitized trust," and they therefore breached

10   the acceleration remedies provision of the Deed of Trust by causing the Notice of Default

11   to be recorded since the Notice of Default was noticed by a trustee not authorized to act

12   on behalf of the "true beneficiaries," who plaintiffs claimed were the certificate holders of

13   the securitized trust.  SAC ¶ 33.  They also claimed that defendants breached the PSA by

14   recording the assignment on March 15, 2011, which was years after the June 2007

15   securitization, as opposed to within 90 days as required by the PSA.  SAC ¶¶ 38-40.

16       Plaintiffs repeated similar allegations in the second cause of action for breach of

17   implied agreements, see SAC ¶¶ 45-47; in the third cause of action for slander of title,

18   see SAC ¶¶ 59-61, 80; in the fourth cause of action for wrongful foreclosure, see SAC

19   ¶¶ 84, 88-90; in the fifth cause of action for violation of § 17200, see SAC ¶ 101-102,

20   105-107; in the sixth cause of action for violation of TILA, see SAC ¶¶ 114-115; in the

21   seventh cause of action for violation of RESPA, see SAC ¶¶ 128-133; and in the eighth

22   cause of action for violation of the FDCPA, see SAC ¶ 150.  Thus, every cause of action

23   reflected plaintiffs' claim that the securitization was improper and that the assignments

24   were "void."

25   B.    Defendants' Motion to Dismiss the SAC

26       In their motion to dismiss the SAC, defendants argued that securitization of the

27   loan did not nullify their right to foreclose. They noted that the court previously rejected

28   plaintiffs' assertions that defendants lacked authority to foreclose based on any alleged

United States District Court
Northern District of California

8

defects in securitization, and they argued that plaintiffs had alleged no facts in the SAC showing that the securitization was improper.  They also noted that ¶ 20 of the Deed of Trust specifically provided that "[t]he Note or a partial interest in the Note (together with this Security Interest) can be sold one or more times without prior notice to the Borrower[,]" and that the power of sale, which plaintiffs had expressly granted in the Deed of Trust, is not nullified when a loan is securitized.

Finally, defendants argued that even if plaintiffs could show that the loan was improperly securitized – which they could not – they still had not alleged any facts showing they suffered any harm as a result.  For example, defendants asserted, plaintiffs did not dispute that they were in default when the foreclosure sale occurred, and did not allege any facts showing that the securitization of the loan had any effect on their ability to make timely payments on the loan.

Plaintiffs did not directly address these arguments in their opposition.  Instead, they argued that they had "standing" to dispute the foreclosure and the "violation" of the PSA.  They asserted that courts have recognized a borrower's right to bring claims challenging a party's interest under a deed of trust; and further, they were not challenging legal securitization under ¶ 20 of the Deed of Trust, but rather, "late transfer to the trust in violation of the [PSA] for the Series 2007-A Trust."  They argued that the court "should follow the line of cases imposing a literal interpretation" of New York Law of Estates, Trusts, and Powers § 7-2.4, which the California Court of Appeal relied on in Glaski v. Bank of America, 218 Cal. App. 4th 1079 (2013), in holding that acts in contravention of the trust are void rather than voidable.

Plaintiffs asserted that applying the literal interpretation of New York Trust Law would further the statutory purpose (to protect trust beneficiaries from wrongful acts of the trustee – in this case, adverse tax consequences of the trust losing its REMIC status). They argued that rather than ruling (as defendants urged) that plaintiffs did not have standing to challenge a breach of the PSA, the court should instead "follow the holding in Glaski that procedural irregularities in a foreclosure proceeding are not required to bring

1    suit for lack of standing due to a post-closing assignment such as is the case here."

2         Plaintiffs also argued that their claims were not barred by the tender rule, because

3    in light of the "void" assignments, requiring plaintiffs to tender the full amount as a

4    prerequisite for seeking to set aside the foreclosure would be inequitable.  Finally,

5    plaintiffs asserted, as to each cause of action (breach of contract, breach of implied

6    agreement, slander of title, wrongful foreclosure, violation of Civil Code § 2923.5,

7    violation of TILA, violation of RESPA, violation of FDCPA) that they had pled facts

8    sufficient to state a claim, including as part of each argument the assertion that the

9    securitization was improper and rendered the assignments – and thus the Notice of

10   Default and the foreclosure sale – void.

11        In the December 17, 2013, order granting the motion to dismiss the SAC, the court

12   first reviewed a number of arguments that applied generally to one or more causes of

13   action.  The court found plaintiffs' arguments unpersuasive, including the argument that

14   the original note did not have endorsements in "wet ink" and thus was never properly

15   endorsed to Wells Fargo; and the argument that the foreclosure sale was invalid because

16   the assignments were "robo-signed."  The court was persuaded by defendants'

17   arguments, including the argument that plaintiffs lacked standing to sue because they

18   had not tendered the full amount of their indebtedness nor alleged credible tender; the

19   argument that plaintiffs' claim under Civil Code § 2923.5 was without merit because

20   § 2923.5 provides relief only in the form of a postponement of an impending foreclosure

21   sale; and the argument that plaintiffs could show no prejudice arising from the alleged

22   foreclosure because the cause of the foreclosure was plaintiffs' default.

23        More importantly for purposes of this order, the court found that the securitization

24   did not nullify any rights granted under the Deed of Trust, including the right to foreclose.

25   The court cited numerous decisions by federal district courts located in California,

26   rejecting claims that a foreclosing entity lacks standing solely as a result of the

27   securitization of the loan.  The court also noted that a majority of federal courts within this

28   district have concluded that plaintiffs lacked standing to challenge noncompliance with a

United States District Court
Northern District of California

1    PSA in securitization unless they were parties to the PSA or third-party beneficiaries to

2    the PSA.  Following this, the court addressed each of the causes of action pled in the

3    SAC, and analyzed each in light of whether plaintiffs had pled facts sufficient to support

4    the elements of each claim.  The court found that SAC failed to state a claim as to any of

5    the eight causes of action, and found further that granting further leave to amend would

6    be futile.

7    C.    California Supreme Court's Decision in Yvanova

8         Prior to Yvanova, California appellate courts regularly held that a borrower had no

9    standing to file a wrongful foreclosure case based on a claim that assignments of the

10   note and deed of trust were void.  See, e.g., Siliga v. Mortg. Elec. Reg. Sys., Inc., 219

11   Cal. App. 4th 75 (2013); Jenkins v. JP Morgan Chase Bank, N.A., 216 Cal. App. 4th 497

12   (2013); Herrera v. Fed. Nat'l Mortg. Ass'n., 205 Cal. App. 4th 1495 (2012); Fontenot v.

13   Wells Fargo Bank, N.A., 198 Cal. App. 4th 256 (2011) (all disapproved of by Yvanova).

14        In Yvanova, the California Supreme Court noted that one key legal issue arising

15   out of the 2008 collapse of the housing bubble was whether and how defaulting

16   homeowners could challenge the validity of the chain of assignments involved in the

17   securitization of their loans.  Id., 62 Cal. 4th at 923.  In the decision below, the Court of

18   Appeal had held that the plaintiff could not state a cause of action for wrongful

19   foreclosure based on an allegedly void assignment because she lacked standing to

20   assert defects in the assignment, to which she was not a party.  Id.  The California

21   Supreme Court accepted review to resolve that "standing" issue.  Id. at 926.

22        The plaintiff in Yvanova had executed a note securing a deed of trust on

23   residential property in 2006.  Id. at 924.  The lender and beneficiary of the trust deed was

24   New Century Mortgage Corporation, which filed for bankruptcy in 2007.  Id.  In 2008, New

25   Century was liquidated and its assets were transferred to a liquidation trust.  Id.  On

26   December 19, 2011, New Century (despite its earlier dissolution) executed a purported

27   assignment of the deed of trust to Deutsche Bank National Trust, as trustee of a Morgan

28   Stanley investment loan trust.  Id. at 924-25.  The recorded document listed New Century

1    as the assignor, and listed Deutsche Bank as trustee for the investment trust.  Id. at 925.

2    Ocwen Loan Servicing was listed as the "contact" for both New Century and Deutsche

3    Bank, and as "attorney in fact" for New Century.  Id.

4            The plaintiff asserted that the investment trust to which the deed of trust on the

5    property was assigned in December 2011 had a closing date (date by which all loans and

6    mortgages or trust deeds must be transferred to the investment pool) of January 27,

7    2007.  Id.  On August 20, 2012, Western Progressive LLC recorded two documents – one

8    dated February 28, 2012, substituting itself in place of Deutsche Bank as trustee on the

9    deed of trust, and a second dated August 16, 2012, giving notice of a trustee's sale.  Id.

10   The property was sold at public auction on September 14, 2012.  Id.  The deed conveyed

11   the property from Western Progressive LLC, as trustee, to the purchaser at auction, THR

12   California LLC.  Id.

13          The plaintiff filed suit.  In the second amended complaint, she asserted a single

14   cause of action for quiet title, against numerous defendants including New Century,

15   Ocwen Loan Servicing, Western Progressive, Deutsche Bank, Morgan Stanley Mortgage

16   Capital, and the Morgan Stanley investment trust.  Id.  Plaintiff alleged that the December

17   19, 2011 assignment of the deed of trust from New Century to the Morgan Stanley

18   investment trust was void for two reasons – New Century's assets had previously been

19   transferred to a bankruptcy trustee, and the Morgan Stanley investment trust had closed

20   to new loans in 2007.  Id.  Defendants demurred, and the demurrer was sustained

21   without leave to amend.  Id. at 925-26.

22          The Court of Appeal affirmed, finding that the quiet title action failed because

23   plaintiff did not allege that she had tendered payment of her debt.  Id. at 926.  The Court

24   of Appeal also considered the question (on which it had received briefing) whether the

25   plaintiff could amend the complaint to plead a cause of action for wrongful foreclosure.

26   Id.  The Court of Appeal concluded that leave to amend was not warranted.  Id.

27          The Court of Appeal acknowledged that there was a split of authority in California,

28   contrasting the decision in Jenkins with the decision in Glaski v. Bank of America, N.A.,

218 Cal. App. 4th 1079 (2013).  Jenkins, issued by the Court of Appeal's Fourth District, slightly predated Glaski, issued by the Fifth District, but the Glaski court did not cite Jenkins.  Although the facts in the two cases differed, the plaintiff in each case challenged the authority of the defendants to initiate nonjudicial foreclosure, claiming that defendants had failed to comply with the provisions of the PSA that governed the securitized trust into which each of the loans had been pooled.

In Jenkins, the plaintiff sued to prevent a foreclosure sale that had not yet occurred, alleging that the purported beneficiary who sought the sale had no security interest because a purported transfer of the loan into a securitized trust was made in violation of the PSA that governed the investment trust.  Id., 216 Cal. App. 4th at 504-05.  The court held that California law did not permit a preemptive judicial action to challenge the authority of the foreclosing beneficiary or beneficiary's agent to initiate and pursue foreclosure.  Alternatively, the court held that as an unrelated third party, the plaintiff lacked standing to enforce any agreements, including the investment trust's PSA, relating to the securitization.  Id. at 515.

In Glaski, the plaintiff challenged a foreclosure sale that had gone forward.  He claimed that his note and deed of trust had never been validly assigned to the securitized trust because the purported assignments under which the foreclosing defendant became the beneficiary were made after the trust's closing date and were thus invalid.  Id., 218 Cal. App. 4th at 1082-87.  The court found that a borrower has standing to challenge such an assignment on the basis that it is void, though not on the basis that it is voidable, and found that cases holding that a borrower may never challenge an assignment because the borrower is neither a party nor a third-party beneficiary of the assignment agreement "paint with too broad a brush" by failing to distinguish between void and voidable agreements.  Id., 218 Cal. App. 4th at 1094-95.

As here, the securitized trust at issue in Glaski was governed by New York law.  The Glaski court pointed to New York Estates, Powers & Trusts Law § 7-2.4, which provides, "If the trust is expressed in an instrument creating the estate of the trustee,

13

United States District Court
Northern District of California

1  every sale, conveyance or other act of the trustee in contravention of the trust, except as

2  authorized by this article and by any other provision of law, is void." Glaski, 218 Cal.

3  App. 4th at 1096.  Because the securitized trust was created by the PSA, which

4  established a closing date after which the trust could no longer accept loans, the court

5  found that § 7-2.4 provided a legal basis for concluding that the trustee's attempt to

6  accept a loan after the closing date would be void in contravention of the trust document.

7  Id. at 1096-97.

8          In interpreting EPTL § 7-2.4, the Glaski court relied on what was then a recent

9  lower-court decision from New York – Wells Fargo Bank, N.A. v. Erobobo, 39 Misc. 3d

10  1220(A), 972 N.Y.S. 2d 147, 2013 WL 1831799 at *8 (Apr. 29, 2013) – which held, in a

11  judicial foreclosure action, that under § 7-2.4, any transfer to a trust in contravention of

12  the trust documents is void.  However, while that decision was good law at the time the

13  Glaski court issued its decision, it was reversed two years later.  See Wells Fargo Bank,

14  N.A. v. Erobobo, 127 A.D. 1176, 9 N.Y.S.3d (Apr. 29, 2015) (mortgagor whose loan is

15  owned by a trust does not have standing to challenge the foreclosing party's possession

16  or status as assignee of the note and mortgage based on purported noncompliance with

17  certain provisions of the PSA).

18          In the interim (between the two Erobobo decisions), the Second Circuit issued its

19  decision in Rajamin v. Deutche Bank Nat'l Trust Co., 757 F.3d 79 (2nd Cir. 2014), holding

20  that even if the plaintiffs (the mortgagors in that case) had standing, based on EPTL § 7-

21  2.4, to challenge a mortgage assignment as invalid, ineffective, or void, "the weight of

22  New York authority is contrary to plaintiffs' contention that any failure to comply with the

23  terms of the PSAs rendered defendants' acquisition of plaintiffs' loans and mortgages

24  void as a matter of trust law."  Id. at 88.

25          The Second Circuit distinguished "void" agreements (void ab initio) from "voidable"

26  agreements (agreements that can be ratified by the parties and which thus can also be

27  voided, but only by the parties), citing authority for the proposition that under New York

28  law, a trust's beneficiaries may ratify the trustee's otherwise unauthorized act, while "a

14

1  void act is not subject to ratification." Id. at 88-89.

> While a few other courts have reached conclusions about EPTL § 7-2.4 similar to that of the Erobobo court, see, e.g., Aurora Loan Services LLC v. Scheller, No. 2009-22839, 2014 WL 2134576, at *2-4 (N.Y. Sup. Ct. Suffolk Co. May 22, 2014); Glaski v. Bank of America, National Association, 218 Cal. App. 4th 1079, 1094-98, 160 Cal. Rptr. 3d 449, 461-64 (5th Dist. 2013), we are not aware of any New York appellate decision that has endorsed this interpretation of § 7-2.4.  And most courts in other jurisdictions discussing that section have interpreted New York law to mean that "a transfer into a trust that violates the terms of a PSA is voidable rather than void," Dernier v. Mortgage Network, Inc., 2013 VT 96, ¶ 34, 87 A.3d 465, 474 (2013); see, e.g., Bank of America National Ass'n v. Bassman FBT, L.L.C., 2012 IL App (2d) 110729, ¶¶ 18-21, 366 Ill. Dec. 936, 981 N.E.2d 1, 8-10 (2d Dist. 2012); see also Butler v. Deutsche Bank Trust Co. Americas, 748 F.3d 28, 37 n.8 (1st Cir. 2014) ("not[ing] without decision . . . that the vast majority of courts to consider the issue have rejected Erobobo's reasoning, determining that despite the express terms of [EPTL] § 7–2.4, the acts of a trustee in contravention of a trust may be ratified, and are thus voidable").

> In sum, we conclude that as unauthorized acts of a trustee may be ratified by the trust's beneficiaries, such acts are not void but voidable; and that under New York law such acts are voidable only at the instance of a trust beneficiary or a person acting in his behalf.  Plaintiffs here are not beneficiaries of the securitization trusts; the beneficiaries are the certificate-holders.  Plaintiffs are not even incidental beneficiaries of the securitization trusts, for their interests are adverse to those of the certificateholders.  Plaintiffs do not contend that they did not receive the proceeds of their loan transactions; and their role thereafter was simply to make payments of the principal and interest due.  The law of trusts provides no basis for plaintiffs' claims.

Id. at 90.

Relying on Jenkins, the Court of Appeal in Yvanova held that plaintiff's allegations of improprieties in the assignment of her deed of trust to Deutsche Bank were of no avail because, as a third party to that assignment, she was unaffected by such deficiencies and had no standing to enforce the terms of the agreements allegedly violated.  Yvanova, 62 Cal. 4th at 926.  The Court of Appeal acknowledged that Glaski, the authority on which plaintiff relied, conflicted with Jenkins on the standing issue, but the court agreed with the reasoning of Jenkins and declined to follow Glaski.  Id.

The California Supreme Court granted plaintiff's petition for review, limiting the

United States District Court
Northern District of California

issue to be briefed and argued to the following:  "In an action for wrongful foreclosure on a deed of trust securing a home loan, does the borrower have standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly rendering the assignment void?"  Id.  The court concluded that "because in a nonjudicial foreclosure only the original beneficiary of a deed of trust or its assignee or agent may direct the trustee to sell the property, an allegation that the assignment was void, and not merely voidable at the behest of the parties to the assignment, will support an action for wrongful foreclosure."  Id. at 923; see also id. at 942-43 ("[A] home loan borrower has standing to claim that a nonjudicial foreclosure was wrongful because an assignment by which the foreclosing party purportedly took a beneficial interest was not merely voidable but void, depriving the foreclosing party of any legitimate authority to order a trustee's sale.").

As to the "narrow question" before it – whether a wrongful foreclosure plaintiff may challenge an assignment to the foreclosing entity as void – the California Supreme Court concluded that Glaski provided a "more logical answer" than Jenkins.  Id. at 935.  The court agreed with Glaski, to the extent Glaski held that "a wrongful foreclosure plaintiff has standing to claim the foreclosing entity's purported authority to order a trustee's sale was based on a void assignment of the note and deed of trust."  Id. at 939.  The court rejected Jenkins insofar as that decision "spoke too broadly in holding a borrower lacks standing to challenge an assignment of the note and deed of trust to which the borrower was neither a party nor a third party beneficiary. Jenkins' rule may hold as to claimed defects that would make the assignment merely voidable, but not as to alleged defects rendering the assignment absolutely void."  Id.

The court explained a void contract has no legal force or effect and never can be ratified or validated by the parties to it, but a voidable contract – despite its defects – is one that the contracting parties either may ratify and thereby give legal force and effect, or extinguish at their election.  Id. at 929-30.  The court added that a borrower challenging a void assignment is not asserting the rights of the parties to the assignment, but rather his or her own right to have a foreclosure conducted solely at the direction of

1    the current holder of the note and deed of trust.  Id. at 935-37.  Because the parties to a

2    void assignment can do nothing to validate it, the borrower is not asserting any rights

3    belonging to those parties when he or she seeks to invalidate the assignment.  Id. at 936.

4         However, the court emphasized that, unlike in Glaski, the question whether

5    "allegations that the plaintiff's note and deed of trust were purportedly transferred into the

6    trust after the trust's closing date were sufficient to plead a void assignment and hence to

7    establish standing" was not before the court.  Id. at 931.  Thus, the court "express[ed] no

8    opinion" on the question whether "a postclosing date transfer into a New York securitized

9    trust is void or merely voidable."  Id.  For this reason, the court did not consider the

10   Rajamin court's "expressed disagreement" with Glaski, on the question "whether, under

11   New York law, an assignment to a securitized trust made after the trust's closing date is

12   void or merely voidable."  Id. at 940-41.

13   D.   Application of Yvanova and Subsequent Decisions

14        In the present case, plaintiffs asserted that because the Deed of Trust was either

15   never transferred to the SAMI II 2007-AR5 Trust, or was transferred after the closing date

16   of the Trust, both the first assignment of the Deed of Trust by MERS, as nominee for BC

17   Bancorp, to MERS, as nominee for EMC, and the second assignment of the Deed of

18   Trust by MERS, as nominee for EMC, to Wells Fargo Bank, were void.  Based on this,

19   plaintiffs alleged that NDeX West (the substituted Trustee) had no legal right to foreclose

20   on the property.

21        A beneficiary or trustee under a deed of trust who conducts an illegal, fraudulent,

22   or willfully oppressive sale of property may be liable to the borrower for wrongful

23   foreclosure.  Yvanova, 62 Cal. 4th at 929; see also Chavez v. Indymac Mortg. Servs.,

24   219 Cal. App. 4th 1052, 1062 (2013).  A foreclosure initiated by one with no authority to

25   do so is wrongful for purposes of such an action.  Yvanova, 62 Cal. 4th at 929.  Only the

26   original beneficiary, its assignee, or the agent of either of them has the authority to

27   instruct the trustee to initiate and complete a nonjudicial foreclosure sale.  Id.

28        Where – as here – a borrower asserts that an assignment was ineffective, a

United States District Court
Northern District of California

17

question often arises about the borrower's standing to challenge the assignment – a transaction to which the borrower is not a party.  In Yvanova, as explained above, the California Supreme Court held that a borrower has standing to sue for wrongful foreclosure in such a situation, but only where an alleged defect in the assignment renders the assignment void rather than voidable.  "Unlike a voidable transaction, a void one cannot be ratified or validated by the parties to it even if they so desire."  Id. at 936.  The court disapproved Jenkins "to the extent [it] held borrowers lack standing to challenge an assignment of the deed of trust as void."  Id. at 939 n.13.  The court added, however, that "Jenkins' rule may hold as to claimed defects that would make the assignment merely voidable . . ."  Id. at 939.

Like the plaintiffs in the present case, the plaintiff in Yvanova alleged that the assignment of her deed of trust into a securitized trust was void because the assignment occurred after the trust's closing date, making the subsequent foreclosure wrongful. Yvanova, 62 Cal. 4th at 925.  However, the Yvanova court expressly declined to address that argument:  "We did not include in our order the question of whether a postclosing date transfer into a New York securitized trust is void or merely voidable, and . . . we express no opinion on the question here."  Id. at 931.  Instead, the court  remanded the case for reconsideration of whether the plaintiff could amend her complaint to state a cause of action for wrongful foreclosure.

Two recent California Court of Appeal decisions – Yhudai v. Impac Funding Corp., 1 Cal. App. 5th 1252 (2016) and Saterbak v. JPMorgan Chase Bank, N.A., 245 Cal. App. 4th 808 (2016) – considered the question the California Supreme Court left open in Yvanova.  The facts in Yhudai and Saterbak are similar to those in the present case.  The deeds of trust in both cases named MERS as the beneficiary, as nominee for the lenders. Yhudai, 1 Cal. App. 5th at 1254; Saterbak, 245 Cal. App. 4th at 811.  The deeds of trust in both cases were sold to securitized investment trusts formed under New York law, and in both cases, MERS, as nominee for the lenders, executed and recorded assignments of the deeds of trust into the securitized trusts after the closing date of the trusts.  Id.

United States District Court
Northern District of California

The plaintiffs in both cases challenged foreclosures on the ground that MERS' untimely assignments of the deeds of trust into the securitized trusts were void.  Id.  Both courts considered the ruling in Yvanova, and then affirmed orders sustaining demurrers without leave to amend, concluding that the borrowers lacked standing to challenge assignments that were merely voidable.  Yhudai, 1 Cal. App. 5th at 1259; Saterbak, 245 Cal. App. 4th at 815.

Subsequent cases have relied on Yhudai and/or Saterbak for the propositions that the borrower under a deed of trust may challenge a nonjudicial foreclosure on the ground that the foreclosing party is not a valid assignee of the original lender only if the alleged assignment is void, but not if the assignment is merely voidable; and that under New York law (the law that applies to the PSA at issue here) an assignment of a deed of trust to a real estate mortgage investment conduit (REMIC) trust after the closing date under the securitization agreement is merely voidable rather than void, and thus the borrower under the deed of trust cannot rely on the late assignment to challenge the nonjudicial foreclosure, even assuming that the assignment was "robo-signed" in that it was signed by a person without legal or corporate authority.  See e.g., Mendoza v. JPMorgan Chase Bank, N.A., 6 Cal. App. 5th 802, 811-17, 819-20 (2016).

In short, a post-closing assignment of a loan to an investment trust renders the assignment voidable, not void.  Mendoza, Yhudai, Saterbak, and unreported decisions issued since Yvanova, have rejected the reasoning underlying Glaski's holding that a defective assignment of a deed of trust into a securitized trust renders the assignment void.  See Mendoza, 6 Cal. App. 6th at 811-17; Yhudai, at 1259; Saterbak, at 815 n.5.[2] The weight of authority now holds that an untimely assignment to a securitized trust, made after the securitized trust's closing date, is not void but merely voidable.  See Saterbak, 245 Cal. App. 4th at  815; Yhudai, 1 Cal. App. 5th at 1259; see also Rajamin, 757 F.3d at 88-89.  Likewise, any failure to comply with the terms of the PSA renders

---

[2]  Saterbak is distinguishable on the basis that it involved a pre-foreclosure challenge.  Id. at 815.

1    Defendants' acquisition of plaintiffs' loan merely voidable by the trust beneficiary, rather

2    than void. Saterbak, 245 Cal. App.4th at 815; see also Rajamin, 757 F.3d at 88-89.

3    E.       Supplemental Briefing in the Present Case

4         Following the remand of the present case, this court ordered supplemental briefing

5    on the effect of the Yvanova decision on the order dismissing the SAC. Defendants filed

6    their supplemental brief on November 2, 2016. They make three main arguments. First,

7    they assert that the "narrow" holding in Yvanova – that a borrower "has standing to claim

8    a nonjudicial foreclosure was wrongful because an assignment by which the foreclosing

9    party purportedly took a beneficial interest in the deed of trust was not merely voidable

10   but void", id., 62 Cal. 4th at 942 – is inapplicable here because plaintiffs failed to plead a

11   "void" loan assignment. They note that the court in Yvanova specifically declined to rule

12   on the question whether a post-closing date transfer into a New York securitized trust is

13   void or merely voidable, which they argue means that Yvanova recognizes borrower

14   standing only where the defect in the assignment renders the assignment void (and not

15   merely voidable).

16        Here, defendants assert, plaintiffs argued in opposition to the motion to dismiss

17   the SAC that their "void" loan transfer theory was premised on Glaski, which (as

18   explained above) held that an untimely loan assignment to a loan trust governed by a

19   PSA to which New York law applies, is "void" under EPTL § 7-2.4. However, defendants

20   argue, the Second Circuit in Rajamin rejected Glaski's interpretation of § 7-2.4. They

21   note further that the Saterbak court concluded, relying on Rajamin, that non-compliance

22   with a PSA closing-date term would render an assignment "merely voidable," rather than

23   void, see Saterbak, 245 Cal. App. 4th at 815, and that the Yhudai court, also relying on

24   Rajamin, similarly held that "a postclosing assignment of a loan to an investment trust

25   that violates the terms of the trust renders the assignment voidable, not void, under New

26   York law[,]" Yhudai, 1 Cal. App. 5th at 1259.

27        Defendants contend that every federal appellate court to consider this issue has

28   followed Rajamin's interpretation of § 7-2.4, including the Ninth Circuit. They cite

20

1    Barcarse v. Cent. Mortg. Co., 661 Fed. Appx. 905, 906 (9th Cir. 2016) ("Under New York

2    law, to which the Barcarses claimed the PSA was subject, these alleged violations of the

3    trust agreement would make the transfers voidable, not void"); and Morgan v. Aurora

4    Loan Servs., LLC, 646 Fed. Appx. 546, 550 (9th Cir. 2016) ("an act in violation of a trust

5    agreement is voidable – not void – under New York law . . . ."); and also cite decisions

6    from the Fifth, Seventh, and Eighth Circuits.  Finally, defendants note, on July 13, 2016,

7    the California Supreme Court denied the petition for review in Saterbak (and also denied

8    the petition for depublication) and on October 26, 2016, denied the petition for review in

9    Yhudai.

10        In their second main argument, defendants contend that while Yvanova noted that

11   California law requires a plaintiff to allege facts establishing "a tender of the amount of

12   the secured indebtedness, or an excuse of tender" in order to state a claim for wrongful

13   foreclosure, the court expressed no opinion as to whether the plaintiff "must allege tender

14   to state a cause of action for wrongful foreclosure under the circumstances of this case."

15   See id., 62 Cal. 4th at 929 n.4.  Defendants assert, therefore, that plaintiffs' claims are

16   still barred by their failure to tender.

17        Under California law, a valid and viable tender of the indebtedness owing is

18   essential to an action to cancel a voidable sale under a deed of trust, see Saldate v.

19   Wilshire Credit Corp., 686 F.Supp. 2d 1051, 1059-60 (E.D. Cal. 2010) (citing cases), and

20   that this tender requirement applies to any cause of action that is "implicitly integrated"

21   with the challenged foreclosure sale, see Arnolds Mgmt Corp. v. Eischen, 158 Cal. App.

22   3d 575, 580 (1984).  Defendants argue that the court correctly ruled in the order

23   dismissing the SAC that "[p]laintiffs' inability to tender bars their attempt to set aside the

24   foreclosure sale . . . , and every claim asserted in the SAC is implicitly connected to

25   plaintiffs' attempt to set aside the foreclosure sale."  See Dec. 17, 2013 Order at 9.  Thus,

26   they contend, since Yvanova made no ruling regarding the tender requirement, no

27   change to this court's ruling is warranted.

28        In their third main argument, defendants contend that while Yvanova noted that

21

California courts require a plaintiff attacking a foreclosure sale to "show prejudice," the court declined to decide whether the allegations in that case established prejudice sufficient to state a claim.  See id., 62 Cal. 4th at 929 n.4.  Defendants assert that a party attacking a foreclosure sale must allege facts demonstrating a defect or irregularity in the nonjudicial foreclosure process caused actual prejudice to their interests under the deed of trust.  In addition, defendants contend, while it is true that Yvanova disapproved Jenkins (and two similar cases), it did so only "to the extent they held borrowers lacked standing to challenge the assignment of a deed of trust as void," see id. at 939 n.13, and expressly did not disapprove the other aspects of those cases, such as their holdings that facts establishing prejudice must be alleged to state a claim attacking a foreclosure sale, see id. at 929 n.4.

Defendants contend that this court correctly ruled that "[p]laintiffs have not alleged facts showing that any alleged irregularities in the process caused them any harm – in particular, plaintiffs do not dispute the underlying debt, and do not dispute that they defaulted on the payments" and that plaintiffs also failed to "allege any facts in the SAC showing that they suffered a distinct prejudice as a result of the complained of irregularities in the securitization process."  Dec. 17, 2013 Order at 12-13.  Defendants argue that because the Yvanova court limited its holding to the issue of standing, and made no ruling regarding the requirement that a party attacking a foreclosure sale must plead facts showing an irregularity that caused them prejudice, no change to the court's ruling is required.

Plaintiffs filed their supplemental brief on December 16, 2016.  Plaintiffs contend that the SAC successfully alleged a void transaction, and that because they alleged a void transaction, the tender rule does not apply.  Plaintiffs agree with defendants that under Yvanova, a borrower has standing to challenge an assignment only on the basis that it is void – not on the basis that it is voidable. They claim, however, that Yvanova "affirmed" Glaski on the issue of standing to sue, and they agree that Yvanova did not decide the question whether a deed of trust transferred to a securitized trust after its

closing date becomes "void" (as opposed to merely "voidable").

In addition, plaintiffs claim that "[d]efendants' main argument stems from the aftermath" of the reversal of the lower court's decision in Erobobo, but argue that it is a "misstatement of the Glaski holding to state that Erobo [sic] invalidates Glaski." According to plaintiffs, "[f]rom the very outset, Glaski was skeptical as to the extent it should be bound by New York case law" and instead "felt that the entire decision hinged on" an interpretation of EPTL § 7-2.4, "the statute that governs all New York trusts." Plaintiffs contend that "[i]nsofar as Glaski cites the holding in Erobobo, it is only as part of a desire to join 'those courts that have read the statute liberally." Thus, plaintiffs assert, "the reversal of Erobobo does not affect the validity of Glaski, or of Yvanova's own reliance on Glaski, because Glaski was never bound to Erobobo." They argue further that defendants' reliance on Yhudai is faulty for the same reason.

Plaintiffs contend that because Glaski was a California court's fair interpretation of EPTL § 7-2.4, the ruling in that case "does not lose its impact" in the wake of Erobobo. Moreover, they argue, Erobobo was reversed "on procedural grounds" – as the court found that the plaintiff had "waived the defense of lack of standing." In any event, plaintiffs argue, regardless of the outcome of Erobobo, what is important here is whether the improper assignment of the Deed of Trust renders the loan void, as a matter of New York law. They claim that under a literal reading of § 7-2.4, it does.

As for defendants' citation to Saterbak and that court's reliance on the Second Circuit's decision in Rajamin for the proposition that the improper assignment of a deed of trust to a securitized trust renders it voidable rather than void, plaintiffs contend that the problem is that Glaski "did not rely on any matter of New York case law to reach its holding." They assert that "Glaski still stands," and that part of its holding "affirms the right of the California courts to interpret New York statutory law in cases where California properties have been assigned to New York trusts." They claim that Glaski "rightly holds that EPTL § 7-2.4 should be interpreted literally in order to achieve its desired effect."

In plaintiffs' view, the statute is clear. They note that the word "voidable" does not

United States District Court
Northern District of California

1    appear anywhere in the text of the statute, which provides that "if the trust is expressed in

2    the instrument creating the estate of the trustee, every sale, conveyance or other act of

3    the trustee in contravention of the trust, except as authorized by this article and by any

4    other provision of law, is void."  EPTL § 7-2.4.  Thus, plaintiffs argue, because the

5    assignments were made after the closing date of the Trust, they are void under § 7-2.4,

6    and, because the assignments were void under that section, plaintiffs have standing,

7    even as non-parties, to challenge the assignments.

8         Plaintiffs also attempt to discredit the <u>Rajamin</u> decision, and particularly, its

9    rejection of <u>Glaski</u>, asserting that while the <u>Glaski</u> court considered the analysis of courts

10   around the country that "felt the way the <u>Rajamin</u> court did," it decided to join the courts

11   that had read § 7-2.4 literally.  In addition, they contend, while it is true that numerous

12   courts have relied on <u>Rajamin</u>, the decision has "little" persuasive value, because it is a

13   decision by a federal appeals court interpreting state law – and, also in plaintiffs' view, its

14   analysis is "very sparse and lopsided" and "relies upon circular reasoning and a subtle

15   reframing of the issue."  They argue that the <u>Rajamin</u> court did not find the word "void"

16   ambiguous, but rather improperly "re-wrote" the statute to use a different word –

17   "voidable."

18        Plaintiffs contend that "the only major issue that gave the <u>Yvanova</u> court pause

19   was the issue of whether or not a foreclosure sale had taken place."[3]  They argue that

20   because § 7-2.4 could have used "voidable" but opted to use only the word "void," courts

21   should not be reading the statute as though it also includes the word "voidable."

22   F.    Analysis

23        On reconsideration, the court finds that the SAC was properly dismissed for failure

24   to state a claim.  This is so even though <u>Yvanova</u> disapproved <u>Jenkins</u> and other

25   California Court of Appeal decisions that the court previously cited in ruling that plaintiffs

26   did not have standing to sue for wrongful foreclosure.

27   _____

28   [3]  This is not supported by a reading of <u>Yvanova</u>, which in any event was not faced with
     deciding that issue.

1    A wrongful foreclosure is a common law tort claim to set aside a foreclosure sale,

2    or an action for damages resulting from the sale, on the basis that the foreclosure was

3    improper.  Sciarratta v. U.S. Bank Nat'l Ass'n, 247 Cal. App. 4th 552, 561 (2016).  "Mere

4    technical violations of the foreclosure process will not give rise to a tort claim; the

5    foreclosure must have been entirely unauthorized on the facts of the case."  Id. at 562

6    (quotation omitted).

7    As explained above, Yvanova holds that where a note and deed of trust have been

8    transferred to a securitized trust, and the loan goes into default, a borrower has standing

9    to challenge a subsequent foreclosure if the prior transaction was void – but not if it is

10   voidable.  Yvanova did not rule on whether the securitization process rendered the

11   transaction void or voidable, but cases both prior to, and especially subsequent to,

12   Yvanova, have held that failure by the parties to the securitization to comply with the

13   provisions of the PSA renders the transaction voidable but not void.  This includes any

14   late assignments of beneficial interest in a particular loan which is being placed into the

15   securitized trust.  Thus, under Yvanova, and subsequent decisions, because plaintiffs in

16   this case have alleged no void transaction, but only (at best) a voidable transaction, they

17   do not have standing to assert a claim of wrongful foreclosure.

18   While § 7-2.4 states that a trustee's act contravening the terms of a trust is void,

19   the "weight of New York authority" is that "unauthorized acts by trustees are generally

20   subject to ratification by the trust beneficiaries," and are therefore merely voidable at the

21   beneficiary's election.  Rajamin, 757 F.3d at 88.  Indeed, Rajamin expressly rejected

22   Glaski 's contrary interpretation of the statute, explaining "we are not aware of any New

23   York appellate decision that has endorsed this interpretation of § 7–2.4."  Id. at 90.

24   Moreover, as discussed above, the unpublished trial court opinion Glaski cited to

25   support its interpretation of § 7-2.4 has been reversed.  See Erobobo, 127 A.D.3d at

26   1178.  Based on this authority, the Saterbak court declined to follow this aspect of Glaski

27   and concluded that "the alleged defects [ – the assignment of a deed of trust to a

28   securitized mortgage investment trust after it closed – ] merely render the assignment

voidable." <u>Saterbak</u>, 245 Cal. App. 4th at 815 & n.5.  Similarly, the <u>Yhudai</u> court held that "[b]ecause the decision upon which <u>Glaski</u> relied for its understanding of New York law [<u>Erobobo</u>] has not only been reversed, but soundly and overwhelmingly rejected, we decline to follow <u>Glaski</u> on this point."  <u>Yhudai</u>, 1 Cal. App. 5th at 1259 (citing <u>Saterbak</u>).

The <u>Mendoza</u> court also rejected <u>Glaski</u>'s literal interpretation of § 7-2.4, based on the reversal of <u>Erobobo</u> and also based on the language in <u>Rajamin</u>.  <u>Id.</u>, 6 Cal. App. 5th at 812-15.  The court noted that New York courts "continue to uphold" the rationale set forth in <u>Rajamin</u> – that "a borrower does not have standing to challenge an assignment that allegedly breaches a term or terms of a PSA because the beneficiaries, not the borrower, have the right to ratify the trustee's unauthorized acts[,]" and that as a consequence, "an assignment after the publicized closing date is voidable, not void, under New York law."  <u>Id.</u> at 813 (citations omitted).

Post-<u>Yvanova</u> decisions by the Ninth Circuit support defendants' argument that the alleged violations of the trust agreement render the assignments voidable, but not void. See <u>Zeppeiro v. GMAC Mortg., LLC</u>, 662 Fed. App'x 500, 501 (9th Cir. 2016); <u>Barcarse</u>, 661 Fed. Appx. at 906; <u>Morgan</u>, 646 Fed. Appx. at 550.  And finally, numerous district court decisions have adopted similar conclusions.  See, <u>e.g.</u>, <u>Avila v. Wells Fargo Bank</u>, 2016 WL 7425925 at *4 (N.D. Cal. Dec. 23, 2016) ("This order follows the prevailing trend and rejects <u>Glaski</u> as a misstatement of New York law."); <u>Jacinto v. Ditech Fin. LLC</u>, 2016 WL 6248901 at *3 (N.D. Cal. Oct. 26, 2016) (an act in violation of a trust agreement, such as a PSA, is voidable, not void, under New York law); <u>Patel v. U.S. Bank, N.A.</u>, 2016 WL 4013 861 at *1-3 (N.D. Cal. July 27, 2016) (finding that "the weight of the authority demonstrates that an assignment done in violation of the PSA is merely voidable, not void, under New York law"); <u>Spangler v. Selene Fin. LP</u>, 2016 WL 3951654 at *3-4 (N.D. Cal. July 22, 2016) ("<u>Yvanova</u> does not stand for the proposition that a wrongful foreclosure action can be based on an assignment that occurs after the closing date."); <u>Meixner v. Wells Fargo Bank, N.A.</u>, 2016 WL 3277262 at *7 (E.D. Cal. June 14, 2016) ("<u>Glaski</u> is an outlier and not widely accepted law.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court<br>Northern District of California

### CONCLUSION

In accordance with the foregoing, the court DENIES reconsideration of the order of dismissal.  The January 2, 2014 judgment is VACATED.  The court will issue an amended judgment as of the date of this order.

**IT IS SO ORDERED.**

Dated:  March 22, 2017

_____

PHYLLIS J. HAMILTON
United States District Judge